UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN E. SHAW,<br><br>   Plaintiff,<br><br>  v.<br><br>LLOYD J. AUSTIN III, Secretary of Defense, and CARLOS DEL TORO, Secretary of the Navy,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civ. A. No. 20-2036 (RDM) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANTS' RENEWED MOTION TO DISMISS**

MATTHEW M. GRAVES
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

DANIEL P. SCHAEFER
Assistant United States Attorney

*Counsel for Defendants*

## TABLE OF CONTENTS

Preliminary Statement .......................................................................................................... 1

Factual and Procedural Background ...................................................................................... 2

    A.    The First Investigation—May 2018 ..................................................................... 2

    B.    The Inspector General Substantiates the Claims under the MWPA ..................... 3

    C.    The Navy Directs That Corrective Action Be Taken in Accordance with the Inspector General's Findings and Recommendations ............................................. 3

    D.    The Second Command-Directed Investigation ...................................................... 5

    E.    Plaintiff's Objection to the Second Investigation and Review of Corrective Action ...................................................................................................................... 6

    F.    Plaintiff's Failed Attempt to Halt the Second Investigation. .................................. 7

    G.    Plaintiff Amends the Complaint and Moves for Preliminary Injunction in an Unsuccessful Attempt to Halt the Transmission of the Report of Misconduct. ..... 8

    H.    The Court Grants Plaintiff's Motion to Stay Proceedings Pending His Resignation from the Navy ..................................................................................... 9

    I.    Plaintiff's Second Amended Complaint and His New Claim Challenging a Denial of a Promotion That Occurred Prior to His Voluntary Separation ............ 11

Regulatory Framework ....................................................................................................... 12

    A.    Correction of Military Records .......................................................................... 12

    B.    Promotion of Military Officers ........................................................................... 13

Legal Standards ................................................................................................................... 15

    A.    Rule 12(b)(1) ...................................................................................................... 15

    B.    Rule 12(b)(6) ...................................................................................................... 16

Argument ............................................................................................................................ 17

I.    The Court Lacks Jurisdiction Over Any Claim Premised Upon a Negative Personnel Action Allegedly Taken in Retaliation for Whistleblowing Activities. .......................... 17

    A.    The Military Whistleblower Protection Act ........................................................ 17

    B.    The Military Pay Act and Tucker Act ................................................................. 22

C.     The Administrative Procedure Act ........................................................................ 25

II.    Plaintiff Failed to Exhaust His Administrative Remedies. ................................................. 28

    A.     Count I – APA Claim Asserting That the Secretary of the Navy Unreasonably Delayed Corrective Action ................................................................................. 28

    B.     Count II – APA Claim Challenging the Secretary's Alleged Failure to Follow Procedures Mandated by the 10 U.S.C. §§ 624, 1552(a)...................................... 29

    C.     Count III – APA Claim Challenging the Secretary of Defense's Alleged Failure to Follow the MWPA, 10 U.S.C. § 1034 ............................................................ 30

III.   Plaintiff's Claims Challenging a Denial of a Promotion by the Navy Are Not Justiciable........................................................................................................................ 30

IV.   The Complaint Should Be Dismissed for Failure to State a Claim Upon Which Relief May Be Granted. ...................................................................................................... 33

    A.     The Secretary of the Navy's Alleged Unreasonable Delay and/or Failure to Fully Implement Corrective Action (Counts One and Three) ............................. 33

    B.     The Navy's Alleged Failure to Follow Procedures Under 10 U.S.C. § 1552(a) and 10 U.S.C. § 624 (Count Two) ........................................................................ 36

Conclusion .................................................................................................................................... 38

# TABLE OF AUTHORITIES

**Cases**

*Acquisto v. United States*,
  70 F.3d 1010 (8th Cir. 1995) ................................................................................. 20

*Anglers Conservation Network v. Pritzker*,
  809 F.3d 664 (D.C. Cir. 2016) ............................................................................... 34

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 16

*Beauregard v. Mabus*,
  Civ. A. No. 10-1972 RLW, 2012 WL 4857788 (D.D.C. Oct. 15, 2012) ................. 34

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................... 16

*Bias v. United States*,
  722 F. App'x 1009 (Fed. Cir. 2018) ....................................................................... 20

*Blevins v. Orr*,
  721 F.2d 1419 (D.C. Cir. 1983) ............................................................................. 34

*Bond v. Dep't of Just.*,
  828 F. Supp. 2d 60 (D.D.C. 2011) ......................................................................... 15

*Career Educ., Inc. v. Dep't of Educ.*,
  6 F.3d 817 (D.C. Cir. 1993) ................................................................................... 30

*Conservation Force v. Salazar*,
  919 F. Supp. 2d 85 (D.D.C. 2013) ......................................................................... 30

*Covad Commc'ns Co. v. Bell Atl. Corp.*,
  407 F.3d 1220 (D.C. Cir. 2005) ............................................................................. 16

*Dalton v. Specter*,
  511 U.S. 462 ........................................................................................................... 30

*Dysart v. United States*,
  369 F.3d 1303 (Fed. Cir. 2004) ............................................................... 31, 32, 34, 37

*EEOC v. St. Francis Xavier Parochial Sch.*,
  117 F.3d 621 (D.C. Cir. 1997) ............................................................................... 16

*FDIC v. Meyer*,
  510 U.S. 471 (1994) ............................................................................................... 26

*Fitzgerald v. Barnstable Sch. Comm.*,
    555 U.S. 246 (2009) ............................................................................................... 16

*Hardy v. Hamburg*,
    69 F. Supp. 3d 1 (D.D.C. 2014) ................................................................... 20, 24

*Hohri v. United States*,
    782 F.2d 227 (D.C. Cir. 1986) ............................................................................ 15

*House v. United States*,
    99 Fed. Cl. 342 (2011) .......................................................................... 32, 36, 37

*Hubbard v. Adm'r, EPA*,
    982 F.2d 531 (D.C. Cir. 1992) ............................................................................ 27

*Jackson v. Mabus*,
    808 F.3d 933 (D.C. Cir. 2015) ............................................................................ 13

*Jackson v. Spencer*,
    313 F. Supp. 3d 302 (D.D.C. 2018) .................................................. 19, 20, 23, 24

*Jerome Stevens Pharm., Inc. v. FDA*,
    402 F.3d 1249 (D.C. Cir. 2005) .......................................................................... 15

*Kidwell v. Dep't of Army*,
    56 F.3d 279 (D.C. Cir. 1995) ....................................................................... 22, 25

*Klingenschmitt v. United States*,
    119 Fed. Cl. 163 (2014) ...................................................................................... 20

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ............................................................................................ 15

*Lewis v. United States*,
    458 F.3d 1372 (Fed. Cir. 2006) .......................................................................... 32

*McKoy v. Spencer*,
    271 F. Supp. 3d 25 (D.D.C. 2017) ............................................................... 26, 27

*Md. Dep't of Hum. Res. v. Dep't of Health & Hum. Servs.*,
    763 F.2d 1441 (D.C. Cir. 1985) .......................................................................... 27

*Mobarez v. Kerry*,
    187 F. Supp. 3d 85 (D.D.C. 2016) ...................................................................... 15

*Moyer v. United States*,
    190 F.3d 1314 (Fed. Cir. 1999) ................................................................... 36, 37

*Nat'l Motor Freight Traffic Ass'n, Inc. v. Gen. Servs. Admin.*,
    25 F. Supp. 3d 52 (D.D.C. 2014) ............................................................... 26

*Norton v. S. Utah Wilderness,*
    *All.*, 542 U.S. 55 (2004) .............................................................. 33, 34, 35

*Palacios v. Spencer*,
    267 F. Supp. 3d 1 (D.D.C. 2017) ............................................................ 27

*Palacios v. Spencer*,
    906 F.3d 124 (D.C. Cir. 2018) ................................................................ 27

*Penland v. Mabus*,
    78 F. Supp. 3d 484 (D.D.C. 2015) ..................................................... 20, 30

*Piersall v. Winter*,
    435 F.3d 319 (D.C. Cir. 2006) ................................................................ 31

*Portsmouth Redevelopment & Hous. Auth. v. Pierce*,
    706 F.2d 471 (4th Cir. 1983) .................................................................. 24

*Rana v. Dep't of Army*,
    Civ. A. No. 15-0957, 2015 WL 3916361 (D.D.C. June 22, 2015) .......................... 20

*Reilly v. Sec'y of Navy*,
    12 F. Supp. 3d 125 (D.D.C. 2014) ........................................................... 31

*Rigsbee v. United States*,
    226 F.3d 1376 (Fed. Cir. 2000) .............................................................. 36

*Roberts v. United States*,
    741 F.3d 152 (D.C. Cir. 2014) ................................................................ 13

*Rodriguez v. Penrod*,
    857 F.3d 902 (D.C. Cir. 2017) ........................................................... 21, 22

*Rodriguez v. Penrod*,
    Civ. A. No. 18-0240 (CJN), 2020 WL 686012 (D.D.C. Feb. 11, 2020) .................... 32

*Santana v. United States*,
    127 Fed. Cl. 51 (2016) ..................................................................... 20, 23

*Schwalier v. Hagel*,
    734 F.3d 1218 (D.C. Cir. 2013) ......................................................... 27, 28

*Shuler v. United States*,
    531 F.3d 930 (D.C. Cir. 2008) ................................................................ 15

*Soeken v. United States,*
    47 Fed. Cl. 430 (2000) ................................................................................ 20

*Spectrum Leasing Corp. v. United States,*
    764 F.2d 891 (D.C. Cir. 1985) ................................................................... 26

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) ..................................................................................... 15

*Trudeau v. Fed. Trade Comm'n,*
    456 F.3d 178 (D.C. Cir. 2006) ................................................................... 26

*Van Drasek v. Lehman,*
    762 F.2d 1065 (D.C. Cir. 1985) ................................................................. 25

*Vasser v. McDonald,*
    228 F. Supp. 3d 1 (D.D.C. 2016) .............................................................. 16

*Ward v. Brown,*
    22 F.3d 516 (2d Cir. 1994) ........................................................................ 27

*White v. United States,*
    791 F. Supp. 2d 156 (D.D.C. 2011) .......................................................... 15

*Wilson v. James,*
    139 F. Supp. 3d 410 (D.D.C. 2015) .......................................................... 30

*Z St., Inc. v. Koskinen,*
    44 F. Supp. 3d 48 (D.D.C. 2014) .............................................................. 26

*Zixiang Li v. Kerry,*
    710 F.3d 995 (9th Cir. 2013) ..................................................................... 35

**Statutes**

5 U.S.C. § 702 ........................................................................................................ 26

5 U.S.C. § 706 .................................................................................................... 7, 33

10 U.S.C. § 204 ............................................................................................... 25, 29

10 U.S.C. § 611 ...................................................................................................... 13

10 U.S.C. § 618 ...................................................................................................... 13

10 U.S.C. § 624 ............................................................................................... passim

10 U.S.C. § 629 ....................................................................................... 1, 11, 14, 37

10 U.S.C. § 881 ................................................................................................................... 7

10 U.S.C. § 1034 ........................................................................................................... passim

10 U.S.C. § 1552 ........................................................................................................... passim

10 U.S.C. § 1034 ................................................................................................................. 19

10 U.S.C. § 5947 ................................................................................................................. 15

28 U.S.C. § 1346 ................................................................................................................. 24

28 U.S.C. § 1491 ................................................................................................................. 23

37 U.S.C. § 204 ................................................................................................................... 24

U.S. Const. art. 2 ................................................................................................................ 32

**Rules**

Fed. R. Civ. P. 12 ........................................................................................................ 15, 16

**Regulations**

32 C.F.R. § 723.2 .................................................................................................. 12, 13, 29

47 Fed. Reg. 55,897 (Dec. 13, 1982) ................................................................................ 14

## **Preliminary Statement**

Plaintiff Lieutenant Steven E. Shaw, a former officer in the Department of the Navy ("Navy"), brings this action under the Administrative Procedure Act, Tucker Act, and Military Whistleblower Protection Act ("MWPA").

Prior to filing the Second Amended Complaint, Plaintiff voluntarily resigned from the Navy.  The Navy granted Plaintiff's request for an unqualified resignation, and he was discharged in July 2021 at the grade of lieutenant.  When the Navy granted Plaintiff's resignation request, this stopped any further processing or administrative proceedings concerning a delayed promotion.  10 U.S.C. § 629 provides that if an officer on active duty is discharged or transferred to a retired status after he or she has been recommended for promotion, "the officer's name shall be administratively removed from the list of officers recommended for promotion by a selection board."  Plaintiff should have been aware of the consequences of his decision for any possible future promotion he may still have desired that had not yet been decided by the Navy when he resigned.

Defendants request that the Court dismiss the Second Amended Complaint.  First, for a multitude of reasons this Court lacks jurisdiction over any claim predicated upon a negative personnel action allegedly taken in retaliation for whistleblower activities.  Plaintiff attempts to invoke this Court's jurisdiction under the Military Whistleblower Protection Act, the "Military Pay Act," the Tucker Act, and the Administrative Procedure Act.  But Plaintiff fails to satisfy his burden of establishing that this Court has subject-matter jurisdiction under any of the federal statutes that he invokes.  Second, Plaintiff failed to exhaust his administrative remedies under the MWPA or any of the other comprehensive statutory schemes that he references in the Second Amended Complaint.  As one example, Plaintiff claims that the Navy failed to follow procedures mandated by 10 U.S.C. § 1552.  But as to his non-promotion claim, Plaintiff never filed an

application for correction of military records with the Board for Correction of Naval Records ("Correction Board") under Section 1552. Third, Plaintiff's claim for entitlement to a retroactive promotion with associated backpay and other benefits is non-justiciable. Fourth, the Complaint should be dismissed for failure to state a claim. As concerning an allegedly delayed or withheld decision on a possible promotion, Plaintiff fails to plausibly allege that the Secretary of the Navy unreasonably delayed taking any corrective action that was either directed by the Assistant Secretary or that the Secretary was otherwise required to take. Additionally, the Complaint fails to plausibly allege that either the Secretary of the Navy or the Secretary of Defense violated his rights or that either Secretary failed to follow any procedure mandated by the APA, the MWPA, the "Military Pay Act," or any other federal statute or Navy regulation.

## Factual and Procedural Background

Plaintiff is a former U.S. Naval Officer and aviator, who commissioned through the United States Naval Academy in 2009. 2d Am. Compl. ¶ 20 (ECF No. 51). In October 2016, he was assigned to Strike Fighter Squadron 106, based at Naval Air Station Oceana in Virginia, where he served as an F/A-18 fighter pilot instructor. *Id.* While there, Plaintiff engaged in two instances of what the Department of Defense Investigator General ("Inspector General") later determined was protected whistleblower activity under 10 U.S.C. § 1034.

### A.     The First Investigation—May 2018

In May 2018, Plaintiff's commanding officer initiated an investigation (hereinafter, the "First Investigation") into his activities. On September 4, 2018, Plaintiff's name was placed on the Navy's Fiscal Year 2019 promotion selection list for Lieutenant Commander. 2d Am. Compl. ¶ 41; *see also* ECF No. 29-8 (FY-19 Active-Duty Lieutenant Commander Line Selections). The All Navy Message notes that it "is not authority to deliver appointments." ECF No. 29-8 at 1.

2

On October 9, 2018, Plaintiff's promotion was delayed, and he was issued a notice of its delay.  2d Am. Compl. ¶ 42; *see also* Defs.' Ex. 1 (pending delay and possible removal of permanent promotion letter).  Plaintiff was not approved for promotion.  2d Am. Compl. ¶ 16. In November 2018, after the investigation was completed and his command had already taken other administrative actions against Plaintiff, the commanding officer of Strike Fighter Squadron 106, Commander Brandon Scott, recommended that Plaintiff be detached for cause and ordered to show cause for retention in the Navy.  2d Am. Compl. ¶¶ 48-49.

### B.     The Inspector General Substantiates the Claims under the MWPA

On May 13, 2018, several days before the first investigation was initiated, Plaintiff filed a complaint with the Department's Inspector General under the Military Whistleblower Protection Act, 10 U.S.C. § 1034.  *See* 1st Am. Compl. ¶ 88, Apr. 23, 2021 (ECF No. 28). The Inspector General investigated Plaintiff's whistleblower complaint.  On June 12, 2019, the Inspector General released a report substantiating some of Plaintiff's complaints.  The Inspector General found that the First Investigation was conducted in a manner that constituted whistleblower retaliation. 2d Am. Compl. ¶ 44.  The Inspector General recommended that the Secretary of the Navy take appropriate action to remedy any harm to Plaintiff's career that resulted from the unlawful retaliation. *Id.*

### C.     The Navy Directs That Corrective Action Be Taken in Accordance with the Inspector General's Findings and Recommendations

As a result of the Inspector General's report, on December 16, 2019, the Assistant Secretary of the Navy for Manpower and Reserve Affairs entered an order vacating the results of the First Investigation. 2d Am. Compl. ¶ 46; AR 0448-0450 (ECF No. 24-1).  The Assistant Secretary declared the First Investigation "invalid because it was ordered for a retaliatory purpose and was conducted in a retaliatory manner."  The Assistant Secretary's letter further

invalidated "any action taken against [Plaintiff] which uses the [First Investigation] as the basis, in whole or in part, for such actions[.]"  *Id.*

Based on these findings, the Assistant Secretary ordered U.S. Fleet Forces Command and the Chief of Naval Personnel to take several remedial actions.  First, U.S. Fleet Forces Command was directed to "[c]orrect and/or remove any adverse or derogatory material the resulted from" the First Investigation, including certain fitness reports, from Plaintiff's personnel file.  2d Am. Compl. ¶ 46; AR 0449 (ECF No. 24-1).  Next, U.S. Fleet Forces Command was directed to notify the Department of Defense Consolidated Adjudications Facility that the First Investigation, which formed the basis for Plaintiff's security clearance being suspended, had been invalidated.  *Id.*  And the Chief of Naval Personnel was ordered to "determine whether [Plaintiff's] professional or promotion opportunities may have been impacted as a result of reprisal, retaliation[,] and restriction," and if so, to "take remedial action."  2d Am. Compl. ¶ 46; AR 0450 (ECF No. 24-1).  The letter also directed that two of the officers responsible for retaliating be subject to retirement grade determinations.  AR 0449-0450 (ECF No. 24-1).

The Assistant Secretary's order did not preclude a second investigation of Plaintiff. Instead, the Assistant Secretary placed procedural and substantive constraints on any such investigation.  2d Am. Compl. ¶ 60; AR 0449 (ECF No. 24-1).  Any follow-on investigation was to be ordered directly by U.S. Fleet Forces Command and conducted by an officer assigned to U.S. Fleet Forces Command, rather than anyone from Strike Fighter Squadron 106.  *Id.* Witnesses were to be "informed that any previous statements made by them for the purposes of the [First Investigation] will not be used" in the Second Investigation.  *Id.*  Substantively, any renewed investigation could "inquire into" only two allegations: (1) "[w]hether [Plaintiff], without authorization, recorded F/A-18 . . . training sessions" and (2) "[w]hether [Plaintiff] was

conducting unauthorized training (such as Velocity Vector), or was otherwise training outside of phase." *Id.*  In the same letter, the Assistant Secretary directed that all corrective actions were to "be completed within 60 days of the date of" his letter.  AR 0450 (ECF No. 24-1).

### D.    The Second Command-Directed Investigation

On January 10, 2020, Admiral Christopher Grady, the Commander of U.S. Fleet Forces Command, directed a second investigation of Plaintiff that focused on the two allegations that the Assistant Secretary's order had left open (the "Second Investigation").  2d Am. Compl. ¶ 47. This investigation was suspended on February 12, 2020, due to litigation in *Shaw v. Torres*, (Civ. A. No. 20-0410-RDM), but it resumed on April 22, 2020.  *Id.*  On July 14, 2020, the investigating officer submitted his report of investigation to Admiral Grady for review.  *Id.* ¶ 70; AR 1003-1028 (ECF No. 25-1) (Sealed).  In his report, the investigating officer concluded the evidence did not substantiate the first allegation pertaining to the recording of F/A-18 training sessions; however, the evidence did substantiate the second allegation pertaining to Plaintiff conducting unauthorized training.  *Id.*

On September 8, 2020, Admiral Grady issued a final endorsement of the investigator's report from the Second Investigation.  *See* AR 1029-1033 (ECF No. 25-2).  On September 18, 2020, Admiral Grady completed a Report of Misconduct.  2d Am. Compl. ¶ 86; AR 1001-1002 (ECF No. 25-3).

In the Report of Misconduct, Admiral Grady concludes, based on the results of the Second Investigation, that Plaintiff violated two provisions of the Uniform Code of Military Justice—Article 92 for dereliction of duty and Article 133 for conduct unbecoming an officer— by allegedly teaching unauthorized and potentially dangerous landing techniques.  AR 1002 (ECF No. 25-3).  Admiral Grady "direct[ed], request[ed], and recommend[ed]" several administrative actions.  *Id.*  The Admiral "direct[ed] that [Plaintiff] be required to show cause for

retention in the naval service;" "request[ed] that [Plaintiff] be detached for cause;" and "recommend[ed] that [Plaintiff] be removed from" consideration for promotion.  *Id.*

The Report of Misconduct notified Plaintiff that he had the right "to submit comments within 10 working days of receipt concerning this report, which will be included as adverse matter in his official record."  *Id.*  The Report of Misconduct was addressed to the Commander, Navy Personnel Command, and dated September 18, 2020.  *Id.*  Plaintiff received a copy and was provided 10 days to provide an endorsement on the report of misconduct to be considered by the Show Cause Authority.  During this time, however, Plaintiff filed the instant suit.  The Navy agreed to initially stay the transmittal of the Report as part of an informal agreement reached as part of this litigation.  *See* ECF No. 14 at 1; ECF No. 24 at 21.

E.    **Plaintiff's Objection to the Second Investigation and Review of Corrective Action**

In March 2020, Plaintiff submitted a letter to the Secretary of Defense challenging the Assistant Secretary of the Navy's authorization of the Second Investigation.  2d Am. Compl. ¶¶ 12, 66.  In his letter, Plaintiff argued that the Assistant Secretary's decision to authorize the Second Investigation constituted continued whistleblower reprisal and that it was an abuse of discretion and contrary to law.  *Id.* ¶ 66.  Plaintiff also sought to enforce the other remedial actions that the Assistant Secretary had ordered.  *Id.*  However, he never filed—nor does he allege he ever filed—a petition with the Correction Board under the MWPA, nor any petition with the Correction Board at all.

After the first complaint was filed, on December 31, 2020, the Executive Director of the Office of the Under Secretary of Defense for Personnel and Readiness ("Executive Director"),

issued a letter responding to plaintiff's letter and denying further corrective action.  *Id.* ¶ 71; AR

0001-0002 (ECF No. 24-2).  The Executive Director wrote, in relevant part, as follows:

> I have carefully considered the materials you submitted.  Based on my review, I find the actions directed by the Assistant Secretary have been effectuated with the exception of one corrective item, concerning [Plaintiff's] promotion delay, which remains outstanding.  The Chief of Naval Personnel determined the promotion was delayed due to the original [command directed investigation]. However, the delay remains in place since a second investigation was ordered and has not been finalized.  Since the outcome of the second [command directed investigation] could influence the resolution of this matter, the Assistant Secretary reasonably allowed correction of the promotion delay to remain pending.
>
> I also find the Assistant Secretary has the authority to allow the second investigation to be conducted, and his actions do not constitute unlawful command influence.  At this time, there is no justification to set aside the second investigation.  As to [Plaintiff's] new allegation of retaliation related to the second investigation, [the DoD Office of Inspector General] is responsible for investigating or overseeing investigations of allegations of restriction or reprisal; as such, [the Inspector General] is the proper authority to review this allegation and decide whether further investigation is warranted.  Accordingly, I have forwarded this new allegation of retaliation to [the Inspector General] for review and appropriate action.

AR 0002 (ECF No. 24-2); *see also* 2d Am. Compl. ¶¶ 71-73.

> **F.    Plaintiff's Failed Attempt to Halt the Second Investigation.**

In July 2020, while the Second Investigation was still ongoing, Plaintiff filed this lawsuit,

attempting to halt the Second Investigation by asserting three causes of action under the

Administrative Procedure Act ("APA"), 5 U.S.C. § 706.  1st Compl., July 25, 2020 (ECF No.

1).[1]  The original complaint challenged the Navy's delay in implementing the corrective actions

---

[1]      In February 2020, Plaintiff filed a separate complaint and temporary restraining order against a variety of senior Navy officials in their person and official capacities for alleged retaliatory actions.  *See Shaw v. Torres*, Civ. A. No. 20-0410 (RDM) (D.D.C.) ("*Shaw I*").  His first complaint in *Shaw I* asserted 7 causes of action, including many of the same claims he later brought under *Shaw II*: that the second investigation violated some combination of the APA, MWPA, and conspiracy under 10 U.S.C. §881, that the Navy violated the Privacy Act by allegedly providing a command climate survey and the first command investigation to civilian

that the Assistant Secretary ordered, Compl. ¶¶ 66-73, and the Secretary of Defense's delay in

adjudicating his administrative appeal, *id.* ¶¶ 74-80.  Plaintiff asserted that the Second

Investigation could not lawfully proceed while his administrative appeal was pending.  *Id.*

¶¶ 81-87.  At that point, three separate adjudicative processes were proceeding in tandem: the

Second Investigation, Plaintiff's administrative appeal of the order vacating the First

Investigation but permitting the Second Investigation, and this lawsuit.  While the parties

litigated this case, the Navy's administrative processes continued (except for the parties'

agreement that Navy would temporarily stay transmittal of the Report of Misconduct, as

described above).

### G.   Plaintiff Amends the Complaint and Moves for Preliminary Injunction in an Unsuccessful Attempt to Halt the Transmission of the Report of Misconduct.

In February 2021, the Navy informed Plaintiff it would no longer stay transmittal of the

Report of Misconduct and that it planned to transmit the Report on May 1, 2021.  The Navy also

informed Plaintiff he could submit a request to resign at any time.  1st Am. Compl. ¶ 75, n.18,

Apr. 9, 2021 (ECF No. 21).  After the Navy communicated to Plaintiff that it planned to lift the

stay on transmittal of the Report of Misconduct, Plaintiff filed an amended complaint with six

causes of action.  *See generally* 1st Am. Compl.

Plaintiff also sought to enjoin through a preliminary injunction the Navy's transmittal of

the Report of Misconduct that was scheduled to occur on May 1.  Pl.'s Mot. for Prelim. Inj., Apr.

12, 2021 (ECF No. 20).  Following an emergency hearing, the Court issued a decision to deny

---

attorney Mr. Timothy Parlatore, and that attorney Parlatore violated the Privacy Act by obtaining
access to those files.  *Shaw I* is on its third amended complaint, part of which was dismissed with
prejudice after dispositive motions practice.  The remaining claims assert that the Navy violated
the Privacy Act and that civilian attorney Parlatore committed libel.  The parties are currently
litigating a discovery dispute over Shaw's motion to compel responses to his discovery requests
that the Navy objects to as overly broad and unduly burdensome.

Plaintiff's motion for preliminary injunction.  Mem. Op. & Or., May 1, 2021 (ECF No. 37).  The

Court held that Plaintiff's motion failed to show that he was likely to succeed on the merits of his

claims or that he would suffer immediate irreparable harm upon the transmittal of the Report of

Misconduct.

On April 29, 2021, Plaintiff still had not yet provided a comment on the Report of

Misconduct.  As an additional accommodation, U.S. Fleet Forces Commander provided Plaintiff

another 10 business days from May 1, 2021, to submit a comment on the Report, which Plaintiff

did on May 14, 2021.  The full package was then transmitted to the Show Cause Authority, the

Deputy Commander, Navy Personnel Command, for review.

### H.    The Court Grants Plaintiff's Motion to Stay Proceedings Pending His Resignation from the Navy

Defendants filed a Motion to Dismiss the First Amended Complaint.  Defs.' 1st Mot. to

Dismiss, May 12, 2021 (ECF No. 38).  After the deadline for Plaintiff's opposition to

Defendants' first Motion to Dismiss expired, Plaintiff requested a stay of proceedings.  ECF

No. 41.  Plaintiff sought a stay because he planned to request an unqualified resignation.  *Id.*

at 1.[2]

Defendants opposed the stay because Defendants foresaw that, after Plaintiff separated

from the Navy and he resumed this litigation, he would "undoubtedly seek to further amend and

supplement the complaint with new claims" and Plaintiff would "inevitably argue that whatever

relief he obtains from the Navy during the stay of proceedings is either insufficient, arbitrary in

some way, or did not fully resolve all of his claims against the Navy."  ECF No. 43 at 1, 7.

---

[2]    In May 2021, Plaintiff worked with a Congressman to seek release from his obligations
and commission with the Navy.  ECF No. 41.  Plaintiff submitted his request to resign on May
24, 2021. *Id.*  As the Navy had represented back in February 2021, the report of misconduct had
to be adjudicated before his request to resign could be considered.  ECF No. 28, ¶ 75, n.18.

Additionally, the Navy's processing of Plaintiff's resignation would progress independent of this litigation.  The Court directed Plaintiff to file a reply that "address[ed] whether a decision from the Navy to grant his request for an unqualified resignation and honorable discharge would resolve all of the issues in this case or, if not, what issues would remain."  Minute Order, June 9, 2021.

In a reply in support of his stay request, Plaintiff stated that "lifting the long-standing legal hold and approving his request for an unqualified resignation with an Honorable Discharge will moot the issues relating to the unlawful second CDI and his legal hold status."  ECF No. 44 at 1.  "The remaining issues related to this litigation should resolve themselves in the ordinary course without court intervention.  (Correcting records to properly reflect Plaintiff's separation status may take some time but those corrections should occur without a need for court intervention.)"  *Id.*  Upon consideration of these statements, the Court granted Plaintiff's motion and stayed the proceedings through June 30, 2021.  Minute Order, June 17, 2021.  The Court later extended the stay through August 4, 2021.  Minute Order, July 1, 2021.

In contrast with his earlier assurances to the Court that his voluntary resignation during the Court-ordered stay would either moot or resolve the claims in this action without the need for further litigation, Plaintiff argued during the stay that he should be permitted to amend his complaint a second time to bring a new set of claims challenging the Navy's denial of his promotion.  7/1/21 Joint Status Report at 1-2 (ECF No. 46); 8/4/21 Joint Status Report at 1-2 (ECF No. 47).  Defendants argued in response that Plaintiff's impending separation and the additional corrective actions the Navy had taken would moot the claims in the First Amended Complaint and that he should not be permitted to further amend the complaint to bring a new claim challenging a denial of a promotion.  ECF No. 46 at 4-6; ECF No. 47 at 2-3.

Plaintiff's request for an unqualified resignation at his current grade, a lieutenant in the U.S. Navy, was approved on June 25, 2021.  ECF No. 46 at 2-3.  Additionally, the Navy determined Plaintiff would not be required to show cause for misconduct substantiated by the Second Investigation.  *Id.*; *see also* 2d Am. Compl., Exhibit 1; Navy Personnel Manual 1611-010 (explaining show cause authority ¶ 2(2)).  In a letter notifying Plaintiff of the no-show-cause determination, the Navy noted that the [second] investigation would not be included in his official file.  But it could be considered for the purposes of promotion or security clearance determinations.  2d Am. Compl, Exhibit 1.

Accordingly, the Navy processed and granted Plaintiff's request for an unqualified resignation.  Normally, once a case is closed, "if an officer still has a promotion withhold or delay, [Navy Personnel Command] will start the promotion vetting" in accordance with 10 U.S.C. 624.  In Plaintiff's case, however, he voluntarily resigned and separated from the Navy before the Secretary ever reviewed or made a decision regarding promotion.  Moreover, the approval of Plaintiff's request to resign preempted his promotion review.  10 U.S.C. § 629(d) directs that an "officer's name shall be administratively removed from the list of officers recommended for promotion by a selection board" when "an officer on the active duty list is discharged or dropped from the rolls or transferred to a retired status after having been recommended for promotion to a higher grade under this chapter [Chapter 36], but before being promoted."  After the separation processing was completed, Plaintiff was honorably discharged from the Navy on July 31, 2021 at the grade of lieutenant.  ECF No. 47 at 1.

I.  **Plaintiff's Second Amended Complaint and His New Claim Challenging a Denial of a Promotion That Occurred Prior to His Voluntary Separation**

In a Minute Order, the Court directed Plaintiff to file a notice of voluntary dismissal of the claims that he agrees became moot upon his separation from the Navy.  Minute Order, Aug.

5, 2021.  The Court observed that "the parties agree that this development moots all of Plaintiff's claims except for his claim related to his promotion in Count 2."  "To move this case to resolution as expeditiously as possible," the Court ordered Plaintiff to file an amended complaint presenting a single remaining claim relating to his promotion.

On September 29, 2021, Plaintiff filed a Second Amended Complaint.  *See generally* 2d Am. Compl. (ECF No. 51).  Despite the Court's order, the Second Amended Complaint presents not one, but three claims relating to his unobtained promotion.  The First Cause of Action asserts that the Navy violated the APA by unreasonably delaying action on Plaintiff's promotion, as directed by the Assistant Secretary of the Navy.  2d Am. Compl. ¶¶ 49-57.  The Second Cause of Action asserts that the Navy violated the Military Pay Act and the APA because the "Secretary of the Navy failed to follow procedures mandated by statute or by its own regulations when making promotion decisions as required by [10 U.S.C. §§ 624, 1552(a)].  *Id.* ¶¶ 58-62.  The Third Cause of Action asserts that the Secretary of Defense violated the APA when the Secretary "failed to follow Military Whistleblower Protection [] Act," 10 U.S.C. § 1034.  *Id.* ¶¶ 63-64.

### Regulatory Framework

#### A.    Correction of Military Records

Any service member who believes that his or her military file contains an error may request that the Secretary of the military department that created the record make corrections to it.  10 U.S.C. § 1552.  Secretaries generally rely on civilian boards to review and act on requests for correction.  *Id.* § 1552(a)(1). The Secretary of the Navy reviews correction applications through a board of civilians called the Board for Correction of Naval Records.  32 C.F.R. § 723.2(a).  The Correction Board is vested with authority to "correct any military record when it considers it necessary to correct an error or remove an injustice."  10 U.S.C. § 1552.  The Correction Board "is not an investigative body."  32 C.F.R. § 723.2(b).  "Its function is to

consider applications properly before it for the purpose of determining the existence of error or injustice in the naval records of current and former members of the Navy and Marine Corps, to make recommendations to the Secretary or to take corrective action on the Secretary's behalf when authorized." 32 C.F.R. § 723.2(b). "The person seeking to correct a record must provide 'substantial evidence' in order to overcome the Correction Board's presumption that 'public officers,' including military officers, 'have properly discharged their official duties.'" *Roberts v. United States*, 741 F.3d 152, 158 (D.C. Cir. 2014) (quoting 32 C.F.R. § 723.3(e)(2)). "[I]f the Board 'determines that the evidence of record fails to demonstrate the existence of probable material error or injustice,' then it may deny an application for record correction." *Jackson v. Mabus*, 808 F.3d 933, 935 (D.C. Cir. 2015).

### B.     Promotion of Military Officers

Active-duty military officers are selected for, and receive, promotions in grade pursuant to parameters set forth by federal statute. *See* 10 U.S.C. § 611, *et seq.* The law provides that, whenever the needs of the military require, "selection boards" shall be convened pursuant to 10 U.S.C. § 611(a) to recommend that certain active-duty officers be promoted to the next-higher permanent grade. *See id.* §§ 611(a), 616(a). After reviewing the eligible candidates for promotion, the selection board returns to the Secretary of the relevant military department a report listing the names of the officers that it recommends for promotion. *See id.* § 617(a). At this point, the results are published as the promotion list through an All Navy Message (ALNAV), but those results are not approval to appoint. *See* ECF No. 29-8. The Secretary of the Navy then reviews this report to ensure that it complies with applicable laws and regulations. The Secretary of the Navy then submits the report, along with any additional recommendations, to the Secretary of Defense, for further transmittal to the President for his approval. *See* 10 U.S.C. § 618.

13

Throughout this process, the President retains the authority to "remove the name of any officer from a list of officers recommended for promotion by a selection board[.]" *Id.* § 629(a). The President has delegated this authority to the Secretary of Defense by way of executive order. *See* Exec. Order No. 12,396, § 1(b), 47 Fed. Reg. 55,897, 55,897 (Dec. 13, 1982) ("The Secretary of Defense is designated to perform, without approval, ratification, or other action by the President, the following functions vested in the President: . . . (b) The authority vested in the President by Section 629(a) of Title 10 of the United States Code, to remove the name of any officer from a promotion list to any grade below commodore or brigadier general."). The Secretary of Defense has, in turn, further delegated that authority to the Secretary of the Navy in cases involving naval officers being considered for a promotion to the rank of captain (O-6) or below.[3]

10 U.S.C. § 624(d) authorizes the Secretary of the Navy to delay appointments in circumstances described under that section, including (1) "an investigation is being conducted to determine whether disciplinary action of any kind should be brought against the officer"; (2) "substantiated adverse information about the officer that is material to the decision to appoint the officer is under review by the Secretary of Defense or Secretary concerned;" or (3) "the Secretary of the military department concerned determines that credible information of an adverse nature . . . with respect to this officer will result in the convening of a special selection review board" to determine whether the recommendation for promotion of the officer should be sustained." *Id.* Navy regulations further include circumstances such as when "there is cause to

---

[3]     *See* Dep't of Def. Instruction 1320.14, Commissioned Officer Promotion Program Procedures, enclosure 3, ¶ 5(d)(5)(b)(3) (Dec. 11, 2013) ("The Secretary of the Military Department concerned is delegated the authority to remove the name of an officer from a promotion list resulting from a promotion selection board to a grade below general or flag officer.").

believe the officer has not met the requirement for exemplary conduct set forth in 10 U.S.C. § 5947.

## Legal Standards

### A.  Rule 12(b)(1)

Rule 12(b)(1) addresses a court's subject matter jurisdiction to adjudicate a case. "Because this inquiry deals with a court's power to hear a plaintiff's claim, a Rule 12(b)(1) motion imposes on the Court an affirmative obligation to ensure that it is acting within the scope of its authority." *Bond v. Dep't of Just.*, 828 F. Supp. 2d 60, 69 (D.D.C. 2011). "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction[.]" *Id.*

In response to a Rule 12(b)(1) motion, the plaintiff must establish that the court has subject-matter jurisdiction over the claims in the complaint. *Shuler v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008); *White v. United States*, 791 F. Supp. 2d 156, 159 (D.D.C. 2011). If the plaintiff is unable to do so, the Court must dismiss the action. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (citation omitted).

When resolving a Rule 12(b)(1) motion, "the court will 'treat the complaint's factual allegations as true' and afford the plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Mobarez v. Kerry*, 187 F. Supp. 3d 85, 89 (D.D.C. 2016) (citation omitted). But the plaintiff's factual allegations receive "closer scrutiny" than they would in the Rule 12(b)(6) context. *Id.* If necessary, the Court may consider material beyond the allegations in the plaintiff's complaint. *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005); *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986).

### B.      Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests whether the pleader accomplished what it was obligated to do under the federal pleading rules.  A claim will fail this inspection if it asserts a legal theory that is not cognizable as a matter of law or if the factual tale it alleges is implausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  The pleading must demonstrate that the allegations "possess enough heft" to show a plausible entitlement to relief.  *Id.* at 557. Although a complaint need not contain detailed factual allegations, it must allege enough facts to raise a plaintiff's claims beyond the level of speculation, and must "nudge" the claims "across the line from conceivable to plausible."  *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (citation omitted).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  When a claim is challenged under Rule 12(b)(6), the Court presumes that all well-pleaded allegations are true, resolves all reasonable doubts and inferences in the pleader's favor, and views the pleading in the light most favorable to the non-moving party.  *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 249 (2009); *Twombly*, 550 U.S. at 555.[4]

---

[4]      "'In evaluating a Rule 12(b)(6) motion to dismiss, a court may consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies[.]'"  *Vasser v. McDonald*, 228 F. Supp. 3d 1, 8-9 (D.D.C. 2016) (citation omitted).  Courts may also take "judicial notice of facts on the public record . . . to avoid unnecessary proceedings when an undisputed fact on the public record makes it clear that the plaintiff does not state a claim upon which relief could be granted."  *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (citation omitted); *see also EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) (in deciding Rule 12(b)(6) motion, court may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice).

**Argument**

I.      **The Court Lacks Jurisdiction Over Any Claim Premised Upon a Negative Personnel Action Allegedly Taken in Retaliation for Whistleblowing Activities.**

   A.      **The Military Whistleblower Protection Act**

Plaintiff invokes the jurisdiction of this Court under the APA and the MWPA. 2d Am. Compl. ¶ 4. The Third Cause of Action asserts an APA claim that "the Secretary of Defense failed to follow the [MWPA], 10 U.S.C. § 1034," when Plaintiff was "denied his requested relief." *Id.* ¶ 64. In his request for relief, Plaintiff requests that the Court "direct the Secretary of the Navy to adhere to its obligations pursuant to 10 U.S.C. § 624 and 10 U.S.C. § 1034." As argued below in Part IV, these vague allegations fail to state a plausible claim that the Secretary of the Navy and/or the Secretary of Defense violated Plaintiff's rights or denied him relief to which Plaintiff was entitled under the MWPA.

As a threshold matter, however, the Court lacks jurisdiction over any claim that Plaintiff purports to bring under the MWPA. The MWPA establishes a detailed, comprehensive scheme for addressing whistleblower issues within the military. 10 U.S.C. § 1034(a)–(h); *see also id.* § 1034(i) (military authority to promulgate implementing regulations); Dep't of Def. Directive 7050.06 (Nov. 20, 1989). The MWPA provides that a person may not restrict a member of the Armed Forces from lawfully communicating with an Inspector General or a member of Congress. The MWPA also prohibits certain personnel actions in retaliation for such communications. 10 U.S.C. § 1034(a)-(b); *see also id.* § 1034(j)(2) (defining Inspector General as including the Department of Defense and service branch Inspector Generals). When an Inspector General receives an allegation of an actual or threatened violation of the MWPA, the Inspector General "shall expeditiously determine . . . whether there is sufficient evidence to

warrant an investigation of the allegation," and if such evidence exists, the Inspector General "shall expeditiously" investigate the allegation.  10 U.S.C. § 1034(c).

When conducting such an investigation, an Inspector General "shall conduct a separate investigation of the information that the member making the allegation believes constitutes evidence of wrongdoing . . . if there previously has not been such an investigation or if the Inspector General determines that the original investigation was biased or otherwise inadequate." 10 U.S.C. § 1034(d).  After an Inspector General completes an investigation, the Inspector General submits a report on the results of the investigation to the Secretary of Defense, to the Secretary of the military department concerned, and to the service member who made the allegation.  10 U.S.C. § 1034(e).

The Secretary of the military department concerned "shall determine whether there is sufficient basis to conclude whether" a violation of the MWPA "has occurred."  10 U.S.C. § 1034(f)(1).  If the Secretary of the military department concerned determines that a violation has occurred, the Secretary shall order correction of personnel records as necessary and take any appropriate disciplinary action against the person who committed the violation.  10 U.S.C. § 1034(f)(2).  If the Secretary of the military department concerned "determines that an order for corrective or disciplinary action is not appropriate," the Secretary shall provide notice to the Secretary of Defense and to the service member who made the allegation. 10 U.S.C. § 1034(f)(3).

If the service member remains unsatisfied, either because an Inspector General determined that an investigation was not warranted, or because the military did not provide all the relief sought after an investigation, the member may submit an application to a correction board, which "may review the matter."  10 U.S.C. § 1034(g)(1).  "In resolving an application,"

the correction board "(A) shall review the report of the [IG] . . . ; (B) may request the [IG] to gather further evidence; and (C) may receive oral argument, examine and cross-examine witnesses, take depositions, and, if appropriate, conduct an evidentiary hearing." 10 U.S.C. § 1034(g)(2). The Correction Board then makes a recommendation to the Secretary of the military department concerned. 10 U.S.C. §§ 1034(g)(6).

The Secretary of the military department concerned "shall order such action . . . as is necessary to correct the record of a personnel action prohibited by" the MWPA, and the Secretary may "take appropriate disciplinary action against the individual who committed such personnel action." 10 U.S.C. §§ 1034(g)(5), 1034(g)(6). If, after the service member has sought relief through the Correction Board, the service member remains unsatisfied, the service member may request further review by the Secretary of Defense. *See* 10 U.S.C. § 1034(h); Dep't of Defense Directive 7050.06, ¶ 5(a).

In this case, the Assistant Secretary of the Navy determined that corrective action was warranted and directed those actions. Plaintiff was dissatisfied with the ordered corrective action. Rather than apply to the Correction Board and allow the Secretary of the Navy the opportunity to review his claims and reasons for dissatisfaction—as is contemplated by the statute—Plaintiff bypassed the Secretary altogether and went directly to the Secretary of Defense for review. To date, the Service itself has never been presented with the opportunity to review and provide a formal determination under the framework of the MWPA on Plaintiff's claims regarding the Assistant Secretary's actions or alleged inaction.

Because of this comprehensive statutory scheme that Congress created, federal courts lack jurisdiction over MWPA claims. *Jackson v. Spencer*, 313 F. Supp. 3d 302, 308 (D.D.C. 2018). Courts in this jurisdiction have held that the MWPA "does not 'provide . . . any private

cause of action, express or implied.'" *Id.* (quoting *Acquisto v. United States*, 70 F.3d 1010, 1011 (8th Cir. 1995)). "'[N]o judicial review is available under the MWPA because Congress precluded alternative fora by providing a specific form of redress in the statute.'" *Id.* (quoting *Bias v. United States*, 722 F. App'x 1009, 1014 (Fed. Cir. 2018)); *see also Penland v. Mabus*, 78 F. Supp. 3d 484, 495 (D.D.C. 2015) (ruling that the MWPA does not provide a private cause of action; "when Congress has established a specific form of redress, it precludes alternative fora"); *Rana v. Dep't of Army*, Civ. A. No. 15-0957, 2015 WL 3916361, at *1 (D.D.C. June 22, 2015) (citation omitted) (dismissing service member's MWPA claims for lack of subject-matter jurisdiction; explaining that the MWPA "was designed 'to provide channels within the military through which members of the armed forces could bring their grievances'"); *Hardy v. Hamburg*, 69 F. Supp. 3d 1, 26 (D.D.C. 2014) (dismissing for lack of subject matter jurisdiction "claims . . . based on reprisals for [plaintiff's] whistleblower activities").[5]

"[Even if the plaintiff is correct that the court can consider her allegations of retaliation in the context of a Military Pay Act case, the court nevertheless lacks jurisdiction to review the Navy's decision not to promote . . . [Plaintiff] because []he did not exhaust a mandatory administrative review process before filing h[is] suit in this court." *Santana v. United States*, 127 Fed. Cl. 51, 54 (2016), *aff'd in part & vacated in part on other grounds*, No. 16-2435, 732 F. App'x 864, 2017 WL 5632685 (Fed. Cir. 2017). Plaintiff invokes the Military Pay Act in Count Two. Plaintiff alleges that "the Court has jurisdiction to adjudicate a claim under the

---

[5]     *Accord Klingenschmitt v. United States*, 119 Fed. Cl. 163, 185 (2014) (explaining that the court lacks jurisdiction over whistleblower retaliation claims because the existence of the MWPA's "comprehensive scheme establishes that Congress did not intend to provide plaintiffs with a private cause of action to enforce their rights under the MWPA in court"); *Soeken v. United States*, 47 Fed. Cl. 430, 433 (2000) ("Because the Military Whistleblower Protection Act provides strictly administrative remedies, plaintiff does not have a private cause of action on which to file a claim in this court.").

Military Pay Act." 2d Am. Compl. at 1. Plaintiff alleges that he has "satisfied all the legal requirements for promotion, but the military has refused to recognize his status and pay him appropriately." *Id.* Plaintiff requests that the Court "direct the Navy to comply with the procedures mandated by 10 U.S.C. § 624(d)(l)(E) requiring [the Navy] to promote [Plaintiff] and pay him the appropriate back pay[.]" *Id.* Plaintiff's reliance on the "Military Pay Act," 10 U.S.C. § 624, 10 U.S.C. § 1552(a), and the other statutory and regulatory provisions cited in the Complaint, does not alter the fact that the Court lacks jurisdiction over Plaintiff's claims based on alleged reprisals for his whistleblower activities and which assert a challenge to the Navy's alleged failure to promote Plaintiff as a corrective action for his substantiated whistleblower claims.

In *Rodriguez v. Penrod*, 857 F.3d 902, 906 (D.C. Cir. 2017), the D.C. Circuit held that the MWPA did not provide the Court of Appeals with jurisdiction to review in the first instance a Department of Defense order affirming a decision by the Army Board for Correction of Military Records rejecting a former service member's claim that his position was eliminated in reprisal for making whistleblower communications. The *Rodriguez* court also held that the APA did not provide the Court of Appeals to review the Department's order in the first instance. On the first point, the Court of Appeals observed that "the entire Whistleblower Act is 'silent' on the question of judicial review." *Id.* "In this jurisdictional context, silence has meaning: the default rule of district court jurisdiction applies." *Id.*

But the *Rodriguez* case was in a different procedural posture because the plaintiff had first sought relief from the Army's Board for Correction of Military Records and exhausted his

administrative remedies, as contemplated by that statutory scheme.  As the *Rodriguez* court went

on to explain:

> Reinforcing the point, the Whistleblower Act's provision for seeking relief from
> boards for correction of military records, 10 U.S.C. § 1034(g)(1), similarly says
> nothing about direct review in the federal courts of appeals, and district courts have
> routinely reviewed those *board decisions* in the first instance.

*Id.* (citing *Kidwell v. Dep't of Army*, 56 F.3d 279, 283-284 (D.C. Cir. 1995)).  In this case, by

contrast, Plaintiff did not request relief from the Navy's Correction Board.  To any extent

Plaintiff continues to challenge the second investigation as retaliatory, he never exhausted that

claim under the MWPA.  Thus, even assuming the Circuit's decision in *Rodriguez* can be read as

suggesting this Court could conceivably have jurisdiction under the MWPA to review a final

decision from the Navy's Correction Board, that reasoning does not apply here because Plaintiff

failed to exhaust his administrative remedies under the MWPA and there is no such final

decision from the Correction Board that this Court could review.  Accordingly, this Court lacks

jurisdiction to consider Plaintiff's MWPA claim.

**B.     The Military Pay Act and Tucker Act**

The Court likewise lacks jurisdiction over Plaintiff's claims for back pay and other

financial allowances under the Military Pay Act and Tucker Act.  *See* 2d Am. Compl. ¶¶ 6,

58-62.  Plaintiff claims that he should have been promoted to lieutenant commander on

September 1, 2019.  *Id.* ¶ 12-13.  A lieutenant commander is a junior officer in the Navy at

paygrade O-4.[6]  Plaintiff claims that, under Navy procedures mandated by 10 U.S.C. § 624, the

---

[6]     A commissioned officer's monthly rates of basic pay depend on the cumulative years of
service.  An officer with over ten years of experience at the O-4 pay grade earns $7,684.20 in
basic pay per month.  At the O-3 pay grade, Lieutenant Shaw's monthly rate of basic pay was
$6,832.80 (a difference of -$851.40 per month in basic pay).  Defense Finance and Accounting
Service, Monthly Rates of Basic Pay (Commissioned Officer) (eff. Jan. 1, 2020),
https://www.dfas.mil/MilitaryMembers/payentitlements/Pay-Tables/Basic-Pay/CO/ (last visited

Navy was required to promote Plaintiff "to the next higher grade, [and to] provide him the same date of rank, the same effective date for the pay and allowances of the grade to which promoted, and the same position on the active-duty list as he would have had if no delay had intervened." *Id.* ¶ 60; *see also id.* ¶¶ 61-62 (citing 10 U.S.C. ¶ 624(d)(1)(F)).

First, as argued above, the Court "does not have jurisdiction to determine the merits of [Plaintiff's] arguments that any negative personnel decisions were taken in retaliation of what amounts to alleged whistleblowing activities." *Santana*, 127 Fed. Cl. at 54. "[T]he [MWPA] sets forth an exclusive remedy for alleged retaliation against whistleblowers in the military." *Id.* "Although [Plaintiff may] argue[] that []he is not challenging [the denial of his promotion] pursuant to the MWPA, and instead is bringing a claim under the Military Pay Act challenging the Navy's compliance with its rules and regulations, the court reads [his] allegations as stating a whistleblowing claim, which cannot be reviewed in this court under the guise of a Military Pay Act claim." *Id.*

Second, this Court lacks jurisdiction over Plaintiff's claim for back pay and other financial accommodations for which the amount of money in controversy likely exceeds $10,000. "The Tucker Act vests original jurisdiction in the U.S. Court of Federal Claims for civil actions against the United States 'founded either upon the Constitution, or any act of Congress, or any regulation of an executive department, or for liquidated or unliquidated damages in cases not sounding in tort.'" *Jackson*, 313 F. Supp. 3d at 311 (28 U.S.C.

---

Nov. 18, 2019).  As calculated from September 1, 2019, through July 31, 2021 (23 months), the date of Plaintiff's separation from the Navy, the back pay owed would total approximately $19,600.  That amount is not intended to represent a precise back pay calculation, but is merely intended to show that the amount in controversy on the back pay claim likely exceeds $10,000.

§ 1491(a)(1)).  "The Little Tucker Act gives federal district courts concurrent jurisdiction over such civil actions that do not involve claims over $10,000."  *Id.* (citing 28 U.S.C. § 1346(a)(2)).

"Claims Court jurisdiction cannot be avoided by framing an essentially monetary claim in injunctive or declaratory terms."  *Portsmouth Redevelopment & Hous. Auth. v. Pierce*, 706 F.2d 471, 474 (4th Cir. 1983).  A request for an order directing the Navy to comply with procedures that allegedly required the Navy to promote Plaintiff and award him appropriate back pay is indistinguishable from a claim for money damages for which the amount in controversy likely exceeds $10,000.  Count II of the Second Amended Complaint has a header that references only the Military Pay Act and the APA.  2d Am. Compl. at 21.  Moreover, the Second Amended Complaint phrases its request for money as a request for equitable relief.  *Id.* at 22-23.  But "in essence" Plaintiff requests an order directing the Navy to comply with the procedures mandated by 10 U.S.C. § 624 that purportedly compel the Navy to promote him retroactively to September 2019.  Ultimately, he wants the Navy to "pay him the appropriate back pay."  *Id.* at 2.

What is more, in support of Plaintiff's claim for back pay the Second Amended Complaint specifically invokes the Court's jurisdiction under both the Tucker Act and the Military Act:

> Jurisdiction is also proper pursuant to the *Tucker Act* and Military Pay Act when plaintiff has satisfied all the legal requirements for promotion, but the military has refused to recognize his status.  An action *for money* arises under the Military Pay Act in the unusual case in which, on the plaintiff's legal theory, 'there is a clear cut legal entitlement' to the promotion in question, i.e., he has satisfied all the legal requirements for promotion, but the military has refused to recognize his status.

2d Am. Compl. ¶ 6 (emphasis added).  "To the extent that [Plaintiff's] request for . . . back pay can be construed as asserting a claim under the Military Pay Act, 37 U.S.C. § 204, and the Tucker Act, 28 U.S.C. § 1346(A)(2) . . . this Court lacks jurisdiction."  *Jackson*, 313 F. Supp. 3d at 311.  "Absent other grounds for district court jurisdiction, a claim is subject to the Tucker Act

and its jurisdictional consequences if, in whole or in part, it explicitly or 'in essence' seeks more than $10,000 in monetary relief from the federal government." *Kidwell*, 56 F.3d at 284.  The Complaint does not include an explicit request for damages exceeding $10,000.  But this claim is, at its essence, one for backpay.  An order directing the Navy to promote him retroactively to lieutenant commander and award him back pay would likely result in a monetary award from the federal government that exceeds $10,000.

Moreover, Plaintiff has voluntarily separated from the Navy and he is not asking to be reinstated.  If the Court eliminates a claim for money as a substitute for his lost promotion, there is no other proper claim for non-monetary relief over which this Court could maintain jurisdiction. *Cf. Van Drasek v. Lehman*, 762 F.2d 1065, 1068-69 (D.C. Cir. 1985) (district court had jurisdiction over nonmonetary claim against the United States even though same facts giving rise to nonmonetary claim would support a claim for money in the Claims Court).  Under the Tucker Act that Plaintiff expressly invokes in the Complaint, the U.S. Court of Federal Claims has exclusive jurisdiction over the claim based on the amount in controversy.

### C.     The Administrative Procedure Act

Plaintiff claims that Defendants violated his statutory rights under the Military Whistleblower Protection Act and the Military Pay Act, but he also brings the second and third causes of action under the APA.  The Second Cause of Action that references the Military Pay Act (10 U.S.C. § 204) and the APA alleges that the Navy failed to follow procedures mandated by 10 U.S.C. § 1552(a) and 10 U.S.C. § 624.  2d Am. Compl. ¶¶ 58.  The Third Cause of Action references only the APA in the header but the allegations for that count assert that the Secretary of Defense and/or the Secretary of the Navy failed to follow the requirements of the MWPA.  *Id.* ¶ 64.  To the extent Plaintiff relies upon the APA to bring the second and third causes of action, the Court lacks subject-matter jurisdiction because of sovereign immunity.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Because "[s]overeign immunity is jurisdictional in nature," before addressing the merits of Plaintiff's claims, the Court "must first decide whether [Defendant's] immunity has been waived." *Id.* "'Where a plaintiff has brought suit against the federal government (or a government official sued as such), a federal court is without jurisdiction to consider the complaint in the absence of an express waiver of sovereign immunity.'" *McKoy v. Spencer*, 271 F. Supp. 3d 25, 31 (D.D.C. 2017) (quoting *Z St., Inc. v. Koskinen*, 44 F. Supp. 3d 48, 63 (D.D.C. 2014). As the party seeking judicial review, Plaintiff bears the burden of establishing that the federal government has waived its sovereign immunity. *Nat'l Motor Freight Traffic Ass'n, Inc. v. Gen. Servs. Admin.*, 25 F. Supp. 3d 52, 60 (D.D.C. 2014).

Section 702 of the APA, in addition to creating a cause of action, 5 U.S.C. § 702 (first sentence), grants the Government's consent to suit in actions "seeking relief other than money damages." *Id.* (second sentence). This applies to constitutional as well as statutory claims brought under the APA. *See Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 186-87 (D.C. Cir. 2006). "The waiver of immunity under the APA does not apply to cases where a party seeks monetary damages[.]" *Nat'l Motor Freight*, 25 F. Supp. 3d at 61. Congress expressly "restricted section 702's waiver of sovereign immunity by stating that nothing in the APA 'confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.'" *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 892-93 (D.C. Cir. 1985) (quoting 5 U.S.C. § 702). "Moreover, judicial review of an agency action under the APA is only appropriate when 'there is no other adequate remedy in a court.'" *Nat'l Motor Freight*, 25 F. Supp. 3d at 61 (quoting 5 U.S.C. § 704).

In this action, Plaintiff challenges a denial of a promotion to a higher grade that he believes would entitle him to money damages, to include back pay and other financial accommodations.  "The 'damages' Plaintiff requests—back pay . . . lost benefits . . . constitute 'money damages' and accordingly fall outside the APA's waiver of sovereign immunity. *McKoy*, 271 F. Supp. 3d at 33; *see also Hubbard v. Adm'r, EPA*, 982 F.2d 531, 539 (D.C. Cir. 1992) (holding that "[w]e can find no basis . . . on which to conclude that Congress meant to include back pay in its waiver of immunity as to specific relief 'other than money damages.'"); *Palacios v. Spencer*, 267 F. Supp. 3d 1, 5 (D.D.C. 2017) ("Back pay is quintessentially compensatory."), *aff'd* 906 F.3d 124 (D.C. Cir. 2018); *Ward v. Brown*, 22 F.3d 516, 520 (2d Cir. 1994) ("Back pay, as a claim for money damages, falls outside the scope of the APA.").

The phrase "money damages" for purposes of the APA's express waiver of sovereign immunity refers to "compensatory monetary relief that is 'given to the plaintiff to *substitute* for a suffered loss.'"  *McKoy*, 271 F. Supp. 3d at 33 (quoting *Md. Dep't of Hum. Res. v. Dep't of Health & Hum. Servs.*, 763 F.2d 1441, 1446 (D.C. Cir. 1985)).  The court "look[s] only to the essence of a complaint in the absence of an explicit request for monetary relief." *Palacios*, 906 F.3d at 127 (quoting *Schwalier v. Hagel*, 734 F.3d 1218, 1221 (D.C. Cir. 2013)). Although Plaintiff carefully avoids the term back pay in his prayer for relief, he expressly requests monetary relief in his complaint and repeatedly emphasizes his belief that corrective actions must include "pay and allowances"  2d Am. Compl. ¶¶ 6, 14, 18, 19, 60, 62.  Additionally, he expressly cites the Military Pay Act as a statute violated and describes action made under it as an "action for money," *id*. ¶ 6, and says the military has "refused to recognize his status and pay him appropriately."  *Id.* at 2.  Most importantly, however, he specifically requests in his preliminary statement that the Court "direct the Navy to comply with the procedures .  . requiring

them to promote him and pay him the appropriate back pay." *Id.*  Plaintiff's own words reinforce

the true essence of this complaint.  But the Court need not look to the "essence" of a complaint

when there is, like here, an explicit request for monetary relief.[7]

## II.    Plaintiff Failed to Exhaust His Administrative Remedies.

Plaintiff also failed to exhaust his administrative remedies under any of the various

statutory schemes that he attempts to invoke this Court's jurisdiction.

### A.    Count I – APA Claim Asserting That the Secretary of the Navy Unreasonably Delayed Corrective Action

First, Plaintiff failed to exhaust his administrative remedies with respect to his claim that

the MWPA required the Secretary of the Navy to act within a certain amount of time to render a

decision on the corrective action ordered by the Assistant Secretary.  As argued more fully in

Part IV.A., the Secretary of the Navy maintained discretion under 10 U.S.C. §§ 1034 and 1552 to

choose the appropriate corrective actions to take, if any, with respect to his pending promotion.

But judicial review of the Secretary of the Navy's alleged failure to implement corrective actions

directed by the Assistant Secretary is not permitted until Plaintiff exhausts his administrative

remedies, which he failed to do.  If Plaintiff desired to challenge the Secretary's determination of

what corrective actions were "appropriate," the MWPA provides administrative redress by

permitting him to petition the Correction Board.  10 U.S.C. §1034(g) (Correction of records

when prohibited action taken).  Here, the Assistant Secretary made his determination that

corrective and disciplinary actions were appropriate.  If Plaintiff disagreed with the corrective

actions or the speed with which they were implemented, he was able to seek redress under the

---

[7]    Moreover, as argued in the previous section, if the Court eliminates the claim for monetary relief, there is no other non-monetary relief that the Court can provide and over which this Court could properly exercise jurisdiction over an APA claim.  Plaintiff voluntarily resigned from the Navy, and he is not seeking to be reinstated.

MWPA through the Correction Board.  10 U.S.C. §1034(g).  The Correction Board could have

then reviewed his case and provided corrective actions as it deemed necessary to correct an error

or injustice. 10 U.S.C. § 1552(a)(1).  The Secretary would have then been required to issue a

decision on that petition within 180 days; if he did not, the member "shall be deemed to have

exhausted the member's administrative remedies under Section 1552."  In essence, this section

provides for greatly accelerated Correction Board review.  *Cf.* 10 U.S.C. §1552 (providing no

timeline for review before members are considered to have exhausted their administrative

remedy).  However, Plaintiff did not avail himself of this administrative avenue for relief, and

the statute does not provide for judicial review of Secretary's decision regarding the nature of the

actions implemented until Plaintiff has exhausted his administrative remedies.  Plaintiff seeks the

benefit of a statute that he has failed to follow.

**B.      Count II – APA Claim Challenging the Secretary's Alleged Failure to Follow
Procedures Mandated by the 10 U.S.C. §§ 624, 1552(a)**

The Second Cause of Action references the "Military Pay Act" (10 U.S.C. § 204),

10 U.S.C. § 624, 10 U.S.C. § 1552, and the APA.  Plaintiff claims that the Navy failed to follow

procedures mandated by statute and by its own regulations when correcting his records, which

Plaintiff maintains is required by 10 U.S.C. 1552(a).  2d Am. Compl. ¶ 61.  However, this statute

only provides that the Secretary of the Navy reviews correction applications through the

Correction Board.  *Id.* § 1552(a); *see also* 32 C.F.R. § 723.2(a).  But Plaintiff never filed an

application for correction of military records under 10 U.S.C. § 1552.  Because Plaintiff never

petitioned the Correction Board to correct his military record under Section 1552, there is no

final or Secretarial decision under this section for this Court to review.  While exhaustion of a

military pay claim is not typically required, Plaintiff specifically references the Correction Board

statute, and his reliance on this statute is misplaced.

### C.      Count III – APA Claim Challenging the Secretary of Defense's Alleged Failure to Follow the MWPA, 10 U.S.C. § 1034

The Third Cause of Action references the MWPA (10 U.S.C. § 1034) and the APA.  As explained above in Part II.A., Plaintiff failed to exhaust his administrative remedies with respect to any claim under the MWPA.  "[W]here Congress and the [Department of Defense] have developed such a comprehensive scheme to address allegations of retaliatory conduct, an aggrieved member of the military, like Plaintiff, must first exhaust administrative remedies before coming to federal court and seeking review under the APA."  *Wilson v. James*, 139 F. Supp. 3d 410, 433 (D.D.C. 2015); *see also Career Educ., Inc. v. Dep't of Educ.*, 6 F.3d 817, 820 (D.C. Cir. 1993) (requiring exhaustion "in order to give the Department's top level of appeal an opportunity to place an official imprimatur on the Department's interpretation of its regulations before it is reviewed by a federal court"); *Penland*, 78 F. Supp. 3d at 494 (holding with respect to the MWPA that, "when Congress has established a specific form of redress, it precludes alternative fora"); *Conservation Force v. Salazar*, 919 F. Supp. 2d 85, 90 (D.D.C. 2013) (stating that "if the APA and/or an agency rule provides for a review process, an aggrieved party must exhaust that process before seeking judicial review").  Thus, Plaintiff's failure to exhaust his administrative remedies under the MWPA also requires dismissal of the Third Cause of Action.

### III.    Plaintiff's Claims Challenging a Denial of a Promotion by the Navy Are Not Justiciable.

Even were the Court to find that it possesses jurisdiction to review a final decision by the Navy to deny Plaintiff a promotion (or of the Navy's failure to implement the promotion as a corrective action), the Court's "ability to review matters related to military discharges is limited, as military personnel decisions themselves lie outside the court's jurisdiction."  *Penland*, 78 F. Supp. 3d at 494 (internal quotation marks and citation omitted); *see also Dalton v. Specter*, 511 U.S. 462, 477 ("Where a statute. . . commits decisionmaking to the discretion of the President,

judicial review of the President's decision is not available."); *Dysart v. United States*, 369 F.3d 1303, 1317 (Fed. Cir. 2004) ("The President's decision here whether or not to exercise his appointment power is discretionary, and we hold that the President cannot be compelled to appoint military officers."). Many courts in this jurisdiction have thus held that claims for retroactive promotions are non-justiciable. *See Piersall v. Winter*, 435 F.3d 319, 321–22 (D.C. Cir. 2006) (claims for retroactive promotion are nonjusticiable)); *Reilly v. Sec'y of Navy*, 12 F. Supp. 3d 125, 140 (D.D.C. 2014) (merits of an individual military promotion not justiciable). While "courts do sometimes review the actions of military agencies, the Court's jurisdiction in this area is typically limited to challenges to *procedures* —it does not extend to the *merits* of a promotion decision." *Reilly*, 12 F. Supp. at 140 (emphasis in original).

Plaintiff's claims primarily assert a non-justiciable challenge to the merits of a promotion decision and/or other underlying personnel actions. Plaintiff attempts to cast the Second Cause of Action as a challenge to the Navy's procedures mandated by 10 U.S.C. § 1552(a). But Plaintiff never filed an application for correction of military records under Section 1552. *See* Discussion at Part II.B., *supra*. Further, Plaintiff quotes from portions of 10 U.S.C. § 624(d)(1)(F) that provide that if no disciplinary action is taken against an officer, the officer "shall be retained on the promotion list" and "shall, upon promotion to the next higher grade, have the same date of rank, the same effective date for the pay and allowances of the grade to which promoted, and the same position on the active-duty list as he would have had if no delay had intervened." 2d Am. Compl. ¶ 62. Plaintiff argues that he should have been promoted through operation of law. "But under no circumstances may judicial officers exercise that authority or 'order' executive officials to exercise their authority so as to effect any particular

result." *Rodriguez v. Penrod*, Civ. A. No. 18-0240 (CJN), 2020 WL 686012, at *23 (D.D.C. Feb. 11, 2020).

There is no such thing as an "automatic" appointment or promotion of a military officer. 10 U.S.C. § 624 does not, and cannot constitutionally, provide for automatic appointment because neither the text of 10 U.S.C. § 624 nor the legislative history provide any reason to believe Congress intended the statute to provide for automatic appointments, and the statute cannot be read as compelling the President, or his delegee, to appoint military officers. *Dysart*, 369 F.3d 1303; *see also* U.S. Const. art. 2, §2, cl. 2; *Lewis v. United States*, 458 F.3d 1372, 1379 (Fed. Cir. 2006) (once again rejecting the claim that the officer was automatically appointed under Section 624: "We rejected this premise in *Dysart*, and decline to revisit it now.").

The actual process for the appointment of military officers follows the constitutional design.  The President nominates officers from the promotion list provided to him by the military department, and those officers are confirmed by the Senate.  In accordance with the Constitution, the President must then make public the act of appointment for an officer to be promoted."  In addition, "[e]ven where all the preconditions to an appointment have been satisfied, Section 624(d)(4) does not lead to an automatic promotion." *House v. United States*, 99 Fed. Cl. 342 (2011) (citing *Dysart*, 369 F.3d at 1313).[8]  Plaintiff's claim for a retroactive promotion with associated backpay and benefits should thus be dismissed as non-justiciable.

---

[8]     Accordingly, the *House* court found that the plaintiff's claim for backpay, which was predicated on an automatic promotion theory under the same section as that which Plaintiff asserts (10 U.S.C. § 624(d)(4)), failed and would not provide the Court with jurisdiction under the Tucker Act.  *Id.* at 356.

**IV.    The Complaint Should Be Dismissed for Failure to State a Claim Upon Which Relief May Be Granted.**

     **A.    The Secretary of the Navy's Alleged Unreasonable Delay and/or Failure to Fully Implement Corrective Action (Counts One and Three)**

The First and Third Causes of Action both reference the APA and the MWPA.  The First Cause of Action asserts that "the Secretary of the Navy unlawfully withheld and unreasonably delayed corrective action" that the Assistant Secretary of the Navy had ordered be taken. 2d Am. Compl. ¶¶ 49-57.  In the First Cause of Action, Plaintiff asserts that the Secretary of the Navy's failure to implement corrective action violates statutory deadlines set forth in the MWPA.  *Id.* ¶ 55.  The Third Cause of Action asserts that the Secretary failed to follow the MWPA's procedures when it failed to take corrective action.  *Id.* ¶¶ 63-64.

Plaintiff fails to state a claim under the APA and the MWPA under which relief may be granted.  Regarding a possible promotion,  the Assistant Secretary directed only that the Chief of Navy Personnel *assess* "whether LT Shaw's professional or promotion opportunities may have been impacted as a result of the reprisal and, if so, to take remedial action."  2d Am. Compl. ¶ 54; AR 0449-045 (ECF No. 24-1).  Plaintiff's promotion was delayed during the First Investigation, and the delay was extended because of the Second Investigation.  In fact, Plaintiff's lawsuits and requests for injunctions and stays of the Second Investigation contributed to, if not caused, the "delays" of which Plaintiff now complains.

Plaintiff asserts that "[t]he APA requires agencies to act on matters pending without unreasonable delay." 2d Am. Compl. ¶ 50.  5 U.S.C. § 706(1) authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed."  But a "claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take."  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).  The action allegedly withheld or delayed must be both "discrete" and "legally required."  *Id.* at 63.  Section

706(1) "carries forward" the common law writ of mandamus. *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 670 (D.C. Cir. 2016). "And like mandamus, '§ 706(1) empowers a court only to compel an agency 'to perform a ministerial or non-discretionary act.'" *Norton*, 542 U.S. at 64 (citation omitted).

As explained in Part III, this Court lacks authority to order or direct the Navy to promote Plaintiff. *See also Blevins v. Orr*, 721 F.2d 1419, 1422 (D.C. Cir. 1983); *Dysart*, 369 F.3d at 1314; *Beauregard v. Mabus*, Civ. A. No. 10-1972 RLW, 2012 WL 4857788, at *6 (D.D.C. Oct. 15, 2012). "Additionally, although the language of section 624(a)(1) indicates that officers on a promotion list shall be promoted to the next higher grade, the President of the United States is afforded complete discretion to choose whether or not to appoint an officer and the statute does not alter that process by providing for automatic appointment." *Beauregard*, 2012 WL 4857788, at *6 (quoting *Dysart*, 369 F.3d at 1311). Accordingly, Plaintiff fails to plausibly allege that the Navy was required to promote him or that he is entitled to the requested relief.

For multiple reasons, Plaintiff fails to plausibly allege that the MWPA required the Secretary of the Navy to promote Plaintiff or take any other sort of corrective action within a certain amount of time. First, as discussed, the MWPA does not provide for a private cause of action. *See* Part I.A., *supra*. Second, to the extent the MWPA sets a timeline, it provides that where there is a substantiated violation that "[n]ot later than 30 days after receiving the report from the Inspector General . . . the Secretary of the military department concerned, as applicable, shall determine whether corrective or disciplinary action should be taken." 10 U.S.C. § 1034(f)(1). This decision is the only firm, non-discretionary requirement set forth by the statute for the Secretary. The next sentence, which does not set or include a timeline, merely provides authority for the Secretary to correct records, as appropriate, without having to work

through the Correction Board: "If the Secretary concerned determines that corrective or disciplinary action should be taken, the Secretary shall take appropriate corrective or disciplinary action." *Id*; *see also* 10 U.S.C. § 1552(a)(1) ("such corrections *shall* be made by the Secretary acting through boards of civilians of the executive part of the military department.") (emphasis added). Notably, this sentence does not require the Secretary to take "all" corrective actions, merely whatever he deems to be "appropriate." Third, the Assistant Secretary *made* the required determinations in his letter. And Plaintiff is not entitled to judicial review because, among other reasons argued in this Motion, he failed to exhaust his administrative remedies. *See* Part II.A, *supra* (explaining the steps required for Plaintiff to exhaust his administrative remedies under the MWPA).

Fourth, section 706(1) empowers a court only to compel the Navy to perform a ministerial or non-discretionary act. *See Norton*, 542 U.S. at 64. "A claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* action that it is *required to take*." *Norton*, 542 U.S. at 64 (emphasis in the original) (explaining that separation-of-power concerns limit judicial review to compel agency action under § 706(1) in order "to protect agencies from undue judicial interference with their lawful discretion"); *Zixiang Li v. Kerry*, 710 F.3d 995, 1004 (9th Cir. 2013) (separation-of-power principles preclude courts from "compel[ling] agency action merely because the agency is not doing something [the court] may think it should do"). The only discrete, required action even plausibly at issue here is the determination of "whether corrective or disciplinary action should be taken." 10 U.S.C. § 1034(f)(1). The Navy already made this determination, in Plaintiff's favor, finding that both corrective and disciplinary action should be taken. AR 0450 (ECF No. 24-1). Therefore, there is nothing left for the Court to remedy.

35

As to the corrective action that the Assistant Secretary authorized, the decision letter similarly did not order the Chief of Naval Personnel to promote Plaintiff or take any other specific remedial action.  Instead, the Assistant Secretary "direct[ed] the Chief of Naval Personnel to determine whether [LT Shaw's] professional or promotion opportunities may have been impacted as a result of reprisal, retaliation and restriction and if so, take remedial action." AR 0450 (ECF No. 24-1); *see also* AR 0002 (ECF No. 24-2).  The Assistant Secretary did not order, nor is there any statutory or regulatory requirement, that the Chief of Naval Personnel take remedial action according to any timetable or by a date certain.  For all these reasons, Plaintiff fails to state a plausible claim that the Navy had a non-discretionary duty to take any specific, discrete, corrective action concerning Plaintiff's possible promotion.

**B.     The Navy's Alleged Failure to Follow Procedures Under 10 U.S.C. § 1552(a) and 10 U.S.C. § 624 (Count Two)**

Even if this Court finds it has jurisdiction under the Tucker Act, Plaintiff fails to state a claim upon which relief can be granted.  Plaintiff cannot bring an APA or Tucker Act claim to compel the Navy to act on his promotion when his own actions in voluntarily requesting discharge pre-empted that review.  "In Tucker Act terminology, where a discharge is voluntary, there is no entitlement to compensation under the Military Pay Act and, consequently, no money-mandating provision" that triggers jurisdiction under the Tucker Act.  *Rigsbee v. United States*, 226 F.3d 1376, 1378-79 (Fed. Cir. 2000).  "Where a member of the military resigns or retires, his decision is presumed to be voluntary."  *House*, 99 Fed. Cl. at 347 (citing *Moyer v. United States*, 190 F.3d 1314, 1320 (Fed. Cir. 1999)).  Plaintiff must demonstrate otherwise by showing his decision was not freely made.  *Id*.  This is a high standard, and the presumption "is not rebutted by showing that the servicemember faced an inherently difficult situation, as where his choice

was limited to one of two unpleasant alternatives" *Id*. at 347.  A resignation is considered voluntary even where offered to avoid court-martial or some other serious discipline.  *Id*.

In addition, "[e]ven where all the preconditions to an appointment have been satisfied, Section 624(d)(4) does not lead to an automatic promotion."  *House*, 99 Fed. Cl. at 354 (citing *Dysart*, 369 F. 3d at 1313).  Accordingly, the court in *House* found that his backpay claim, which was predicated on an automatic promotion theory under the same section as that which Plaintiff asserts (Section 624(d)(4), failed and would not provide the Court with jurisdiction under the Tucker Act.  *Id*. at 356.

Plaintiff's allegations in the Complaint and his representations to the Court during these proceedings show that his decision to resign was voluntary.  The Navy granted Plaintiff's request for an unqualified resignation, and he was discharged in July 2021 at the grade of lieutenant.  Under 10 U.S.C. § 629, "if an officer on active duty is discharged or dropped from the rolls or transferred to a retired status after having been recommended for promotion to a higher grade, but before being promoted, the officer's name shall be administratively removed from the list of officers recommended for promotion by a selection board."   Plaintiff's request to resign stopped the Navy's processing of a determination on any promotion.

## Conclusion

For the foregoing reasons, Defendants respectfully request that the Court dismiss the

Second Amended Complaint.

Dated: November 23, 2021

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar. #481052
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

Of Counsel:

By: */s/ Daniel P. Schaefer*
    DANIEL P. SCHAEFER
LT Alyssa Degner-Lopez, JAGC, USN    D.C. Bar No. 996871
General Litigation Division    Assistant United States Attorney
Office of the Judge Advocate General    555 4th Street, N.W.
Department of the Navy    Washington, D.C. 20530
    (202) 252-2531
    Daniel.Schaefer@usdoj.gov

*Counsel for Defendants*