## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

STEVEN E. SHAW,

               *Plaintiff*,

     v.

LLOYD J. AUSTIN III, Secretary of Defense, and CARLOS DEL TORO, Secretary of the Navy,

         *Defendants*.

</td><td>

Civil Action No. 20-2036 (RDM)

</td></tr>
</table>

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Steven Shaw, a former F-18 Naval instructor pilot, brings this action against the Secretaries of Defense and the Navy, seeking a Court order directing the Secretary of the Navy to comply with the procedures governing military promotions and whistleblower protection. This lawsuit is just one chapter in a long-running dispute, and the operative complaint—Shaw's Second Amended Complaint—is just the most recent chapter in this lawsuit. As the dispute and this lawsuit have evolved, the legal and factual issues presented have continuously shifted. The question now before the Court is whether the case has evolved to the point that the relief sought lies beyond this Court's authority to mandate. For the reasons explained below, the Court concludes that Shaw has failed to carry his burden of alleging facts—or identifying a legal theory—sufficient to sustain this Court's jurisdiction or to state a claim. The Court will, accordingly, dismiss the Second Amended Complaint without prejudice.

# I. BACKGROUND

For present purposes, the Court accepts Plaintiff's factual allegations as true, and because the Court must assess whether it has jurisdiction, the Court will also consider any record materials that bear on the Court's subject-matter jurisdiction. *See Ranchers-Cattlemen Action Legal Fund, United Stockgrowers of Am. v. U.S. Dep't of Agriculture*, 573 F. Supp. 3d 324, 332 (D.D.C. 2021).

Plaintiff Lieutenant Steven E. Shaw was an F-18 instructor pilot in the Navy until he voluntarily resigned in July 2021. *See* Dkt. 51 at 3, 4 (2d Amd. Compl. ¶¶ 1, 8); Dkt. 46 at 2-3 (noting that Shaw's resignation was approved on June 25, 2021 and that he was subsequently honorably discharged). The years leading up to Shaw's resignation were marked by battle, although not the type of battle that Shaw signed up to fight. Shaw fired the first salvo when, in 2017, he helped two Black student pilots file complaints alleging racial discrimination in the fighter pilot training program and, later that year, filed his own whistleblower complaint (and also complained to Senator Warner), alleging that various pilot instructors and student pilots were illicitly betting bottles of liquor based on student performance. *See* Dkt. 51 at 4-5, 8-12 (2d Amd. Compl. ¶¶ 7-8, 21-29). In May 2018, Shaw's commanding officer struck back by initiating an investigation of Shaw's own (unrelated) activities. *Id.* at 5, 13, 15-17 (2d Amd. Compl. ¶¶ 9, 33, 35-38, 40-43); Dkt. 52-1 at 10. Although Shaw's name was placed on the Navy's FY 2019 promotion selection list for Lieutenant Commander in September 2018, *see* Dkt. 51 at 6 (2d Amd. Compl. ¶ 12); Dkt. 29-8 at 5, any prospect he had of promotion was delayed pending resolution of the ongoing investigation and any "subsequent command actions," *see* Dkt. 52-2 at 2. The 2018 investigation "spanned months," and Shaw's commanding officer

ultimately recommended Shaw "be detached for cause and ordered to show cause for retention by the Navy," *Shaw v. Austin*, 539 F. Supp. 3d 169, 173 (D.D.C. 2021) ("*Shaw I*").

Shaw, however, regained lost ground when, in June 2019, the Navy Inspector General found that the 2018 investigation was initiated in retaliation for Shaw's protected, whistleblower activities. Dkt. 51-1 at 17 (2d Amd. Compl. ¶ 44); Dkt. 24-1 at 2. Based on that conclusion, in December 2019, the Assistant Secretary of the Navy for Manpower and Reserve Affairs (hereinafter "Assistant Secretary") determined that (1) "[t]he command directed investigation" was "invalid because it was ordered for a retaliatory purposes and was conducted in a retaliatory manner," and (2) as a result, "any action taken against Lt. Shaw which" was premised on the 2018 investigation, "in whole or in part," was also "invalid." Dkt. 24-1 at 3. Consistent with those conclusions, the Assistant Secretary directed that (1) "any adverse or derogatory material that resulted from" the 2018 investigation be corrected and removed from "Lt. Shaw's Official Military Personnel File;" (2) the Commander of the U.S. Fleet Forces Command, Admiral Christopher Grady, take steps to address the suspension of "Shaw's security clearance;" and (3) "the Chief of Navy Personnel . . . determine whether Lt. Shaw's professional or promotion opportunities may have been impacted as a result of reprisal, retaliation and restriction . . . and[,] if so, . . . to take remedial action." *Id.* at 3-4. At the same time, the Assistant Secretary directed that the two officers responsible for the retaliatory action be subject to retirement grade determinations. *Id.* at 4.

The conflict did not end there, however. The Assistant Secretary permitted a second investigation of Shaw to take place, subject to various procedural and substantive guardrails designed to avoid the taint of the retaliatory investigation. *Id.* at 3. The second investigation commenced in January 2020 and, as the Assistant Secretary required, was limited to two

questions: (1) whether Shaw, without authorization, recorded F-18 training sessions, and (2) whether he conducted unauthorized training or "was training outside of phase." *Shaw I,* 539 F. Supp. 3d at 174; *see also* Dkt. 24-1 at 3.  In March 2020, Shaw appealed the Assistant Secretary's authorization to conduct the second investigation to the Secretary of Defense, but, before the Secretary of Defense acted on that appeal, the officer assigned to conduct the second investigation issued his report to Admiral Grady.  *Shaw I*, 539 F. Supp. 3d at 174.  That report found that the first allegation was not substantiated but that the second allegation was substantiated.  *Id.*  A few days later, Shaw initiated this lawsuit, challenging the Navy's delay in implementing the corrective actions that the Assistant Secretary ordered, the Secretary of Defense's delay in adjudicating his administrative appeal, and the lawfulness of proceeding with the second investigation while his appeal was pending.  Dkt. 1.

While the lawsuit was pending, however, "Admiral Grady issued a final endorsement of the investigator's report from the second investigation" and completed a Report of Misconduct. *Shaw I*, 539 F. Supp. 3d at 174-75; *see also* Dkt. 25-3 at 2-3.  In particular, he (1) determined that Lt. Shaw "was willfully derelict in the performance of his duties by knowingly and repeatedly conducting unauthorized training by teaching a landing technique that diverged from standardized guidance and by training in phases of instruction for which he was not qualified;" (2) requested that Lt. Shaw "be detached for cause;" and (3) "recommend[ed] that Lt. Shaw be removed from the FY-19 active duty O-4 line promotion list."  Dkt. 25-3 at 2-3.  Although Admiral Grady provided Shaw with ten working days to submit comments regarding his determinations and recommendations, *id.* at 3, "[t]he Navy agreed to initially stay the transmittal of the Report as part of an informal agreement reached as part of this litigation," Dkt. 52-1 at 14.

4

At the same time, Shaw sought relief on yet another front.  In March 2020, a few months before filing this lawsuit, Shaw (through counsel) sent a letter asking the Secretary of Defense to preclude the second investigation from proceeding, arguing that the second investigation failed to abide by the directions of the Assistant Secretary; "constitute[d] continuing retaliation;" and was otherwise unlawful.  Dkt. 52-1 at 13 (2d Amd. Compl. ¶ 11).  After Shaw brought suit, the Executive Director of the Office of the Under Secretary of Defense for Personnel and Readiness responded to that letter on behalf of the Secretary of Defense.  Dkt. 24-2 at 2.  He wrote:

> I have carefully considered the materials you submitted.  Based on my review, I find the actions directed by the Assistant Secretary have been effectuated with the exception of one corrective item, concerning your client's promotion delay, which remains outstanding.  The Chief of Naval Personnel determined the promotion was delayed due to the original [investigation].  However, the delay remains in place since a second investigation was ordered and has not been finalized.  Since the outcome of the second [investigation] could influence the resolution of this matter, the Assistant Secretary reasonably allowed correction of the promotion delay to remain pending.
>
> I also find the Assistant Secretary ha[d] the authority to allow the second investigation to be conducted, and his actions d[id] not constitute unlawful command influence.  At this time, there is no justification to set aside the second investigation.  As to your client's new allegation of retaliation related to the second investigation, [the Inspector General for the Department of Defense] is responsible for investigating or overseeing investigations of allegations of restriction or reprisal; as such, [the Inspector General] is the proper authority to review this allegation and decide whether further investigation is warranted.  Accordingly, I have forwarded this new allegation of retaliation to [the Inspector General] for review and appropriate action.

*Id.* at 3.

In February 2021, the Navy informed Shaw that it would no longer stay transmittal of Admiral Grady's Report of Misconduct "and that it planned to transmit the Report on May 1, 2021."  Dkt. 52-1 at 16.  In response, Shaw filed a motion for preliminary injunction, requesting that the Court stay "any and all adverse administrative actions flowing from the second . . . investigation."  Dkt. 20-1 at 27.  In *Shaw I*, the Court denied that motion, concluding that Shaw

had failed to carry his burden of establishing a likelihood of success on the merits, irreparable

injury, or that the balance of equities or the public interest weighed in favor of preliminary relief.

539 F. Supp. 3d at 178-84.

Shortly after the Court denied Shaw's motion for a preliminary injunction, Defendants

moved to dismiss the First Amended Complaint, arguing that each of Shaw's claims failed as a

matter of law, that Shaw lacked standing, that his claims were not ripe, and that his claims were

non-justiciable.  Dkt. 38-1.  In responding to that motion, Shaw asked the Court to stay

proceedings pending his "expedited and Honorable Discharge from active . . . duty."  Dkt. 41 at

1.  In support of that request, Shaw represented that his "resignation, with full restoration of his

record, may end the need for further litigation of this matter."  *Id.* at 2.  Defendants, in turn, were

less sanguine that Shaw's anticipated resignation would bring the case to an end and argued that

Shaw would "undoubtedly seek to further amend and supplement [his] complaint with new

claims."  Dkt. 43 at 7.  In response, Shaw reiterated his belief that his resignation would "moot

the issues relating to the [allegedly] unlawful second [investigation]" and that "[t]he remaining

issues . . . should resolve themselves in the ordinary course without court intervention."  Dkt. 44

at 1.

The Court agreed to stay the case until June 30, 2021 and directed the parties to "file

either a stipulation of dismissal or a joint status report addressing next steps in the litigation" by

August 4, 2021.  Minute Order, June 1, 2021; Minute Order, July 1, 2021.  Although Shaw did

voluntarily dismiss certain claims, Dkt. 49, as Defendants predicted, he subsequently filed a

Second Amended Complaint, asserting three causes of action: (1) the Secretary of the Navy

unlawfully withheld and unreasonably delayed the required corrective action; (2) the Secretary of

the Navy failed to comply with 10 U.S.C. § 1552(a) and 10 U.S.C. § 624; and (3) the Secretary

of Defense failed to comply with the Military Whistleblower Reprisal Protection Act

("MWRPA"), 10 U.S.C. § 1034.  Dkt. 51-1.  Arguing lack of jurisdiction, failure to exhaust

administrative remedies, non-justiciability, and failure to state a claim, Defendants now move to

dismiss in the hopes of bringing this long-running battle to a close.  Dkt. 52-1.

     For the reasons explained below, the Court will **DISMISS** Shaw's Second Amended

Complaint for lack of subject-matter jurisdiction to the extent it raises any claim for monetary

relief and for failure to state a claim in all other respects.

## II.  LEGAL STANDARD

     Defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6).  Dkt. 52 at 1.

     A motion to dismiss under Rule 12(b)(1) challenges the Court's jurisdiction to hear the

claim and may raise a "facial" or "factual" challenge to the Court's jurisdiction.  A facial

challenge asks whether the plaintiff has pleaded facts sufficient to establish jurisdiction, while a

factual challenge asks the Court to "consider the complaint supplemented by undisputed facts

evidenced in the record, or the complaint supplemented by undisputed facts plus the court's

resolution of disputed facts."  *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir.

1992).  Whether the motion to dismiss is facial or factual, the plaintiff bears the burden of

establishing by a preponderance of the evidence that the court has subject-matter jurisdiction.

*See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

     A 12(b)(6) motion to dismiss is designed to "test[] the legal sufficiency of a complaint."

*Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  In evaluating such a motion, the Court

"must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim' to relief, and

then determine whether the plaintiff has pleaded those elements with adequate factual support to

'state a claim to relief that is plausible on its face.'" *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009)) (alterations in original) (internal citation omitted).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## III.  ANALYSIS

Deciding which, if any, portions of Shaw's Second Amended Complaint can survive Defendant's motion to dismiss must begin with an effort to discern what Shaw is asking the Court to do and on what basis, which is itself no easy task.  The complaint merely asks that the Court order "the Secretary of the Navy to adhere to [his] obligations pursuant to 10 U.S.C. § 624," which establishes procedures for military promotions, and the Military Whistleblower Protection Act of 1988 ("MWPA"), 10 U.S.C. § 1034, which requires the Secretary to take corrective action following a finding of retaliatory personnel action by the Inspector General. Dkt. 51 at 22.  But it does not explain what that relief would entail.  Nor do the three causes of action outlined in the complaint add much clarity.  The first cause of action challenges the Secretary's "delay" in taking "the appropriate" or "requisite corrective action."  *Id.* at 18-19 (2d Amd. Compl. ¶¶ 50-57).  The second cause of action challenges the Secretary's purported failure "to follow procedures mandated" by 10 U.S.C. § 1552(a) and 10 U.S.C. § 624 respecting Shaw's promotion, Dkt. 51 at 21 (2d Amd. Compl. ¶¶59-62), although Shaw concedes that the "merits of promotion decisions may be nonjusticiable," *id.* at 2 (2d Amd. Compl.).  Although that cause of action also refers to the Military Pay Act, 37 U.S.C. § 204, Shaw's prayer for relief contains no request for monetary relief.  Dkt. 51 at 21, 22 (2d Amd. Compl.).  Finally, the third cause of

action is the most puzzling of all.  With little explanation, it merely alleges (in a single paragraph) that the Secretary of Defense failed to comply with the MWPA, 10 U.S.C. § 1034, and that the "[t]he final adjudication by the Secretary of Defense . . . is barren and untethered to the exhaustive and well documented appeal."  Dkt. 51 at 22 (2d Amd. Compl. ¶ 64).

Shaw's opposition to Defendants' detailed and lengthy motion to dismiss includes only four pages of argument, which does little to clarify his theories of relief.  He makes no mention of the Military Pay Act and offers no rebuttal to Defendants' persuasive argument that any claim for monetary relief would inevitably exceed $10,000 and would, accordingly, fall within the exclusive jurisdiction of the Court of Federal Claims, 28 U.S.C. § 1491(a)(1); *see also* 28 U.S.C. § 1346(a)(2).  Because Shaw wholly ignores this argument, the Court will treat Defendants' motion to dismiss any claim for monetary as conceded.  *See Wannall v. Honeywell, Inc*., 775 F.3d 425, 428 (D.C. Cir. 2014) ("if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded"); LCvR 7(b) ("If . . . a memorandum [in opposition to a motion] is not filed within the prescribed time, the Court may treat the motion as conceded.").

Nor does Shaw contest that the Court lacks the authority to order his promotion.  Indeed, Shaw acknowledges, as he must, that the "merits of promotion decisions may be nonjusticiable," Dkt. 53 at 3; Dkt. 51 at 2; *see also Piersall v. Winter*, 435 F.3d 319, 322 (D.C. Cir. 2006), and he makes no effort to respond to Defendants' contention that, "'under no circumstances may judicial officers . . . "order" executive officials to exercise their authority'" to promote military officers.  Dkt. 52-1 at 39-40 (quoting *Rodriguez v. Penrod*, 2020 WL 686012, at *23 (D.D.C. Feb. 11, 2020)).  So, as with any claim for monetary relief, Shaw has conceded Defendants' motion to the extent it seeks dismissal of any claim for promotion.

Adding to the confusion, Shaw includes at least one claim in his opposition brief that (as far as the Court can discern) appears no where in his Second Amended Complaint.  He argues, in particular, that the Navy violated an unspecified "statute and regulation" by failing to issue "a new notice" regarding the delay in his promotion resulting from the second investigation.  Dkt. 53 at 7.  "It is axiomatic, however, that a party may not amend his complaint through an opposition brief."  *Sai v. TSA*, 326 F.R.D. 31, 33 (D.D.C. 2018) (citations omitted and internal quotation marks removed).

Sorting through all of this, then, it appears that the gravamen of Shaw's Second Amended Complaint is that the Navy (1) failed fully and promptly to implement the Assistant Secretary's direction to remove "any adverse or derogatory material that resulted from" the 2018 investigation from his military personnel file and to determine whether his "professional or promotion opportunities may have been impacted as a result of reprisal, retaliation and restriction . . . and[,] if so, . . . to take remedial action," Dkt. 24-1 at 3-4; and (2) otherwise failed to follow the required procedures and timeline for considering him for promotion.  Dkt. 53 at 3; 5-9.  "The only reason Lt. Shaw's promotion was not resolved" prior to his resignation was, according to Shaw, in "reprisal" for his protected, whistleblower activity.  Dkt. 51 at 8.  For the reasons explained below, each of Shaw's claims fail as a matter of law.

**A.**

Defendants first argue that, to the extent that Shaw premises his claims on the MWPA, the Court is without jurisdiction and Shaw lacks a cause of action.  Although much of what

Defendants argue is correct, the Court concludes that the defect is not a jurisdictional one and that the APA provides the requisite cause of action.

Defendants correctly observe that "[t]he MWPA establishes a detailed, comprehensive scheme for addressing whistleblower issues within the military." Dkt. 52-1 at 25. The statute prohibits any person from taking, or threatening to take, "an unfavorable personnel action, or [from] withhold[ing] (or threaten[ing] to withhold) a favorable personnel action, as a reprisal against a member of the armed forces for making or preparing" a protected whistleblower communication. 10 U.S.C. § 1034(b). Under the governing scheme, "[a]ny member of the armed forces who believes he was subjected to such reprisal may submit an allegation to an Inspector General within the Department of Defense, including within the relevant branch of the armed services," *Rodriguez v. Penrod*, 857 F.3d 902, 904 (D.C. Cir. 2017), here, the Navy. "The Inspector General [must] then 'determine * * * whether there is sufficient evidence to warrant an investigation,'" and, if so, "must undertake that investigation and report the results to the Secretary of Defense and the Secretary of the relevant military department." *Id.* (quoting 10 U.S.C. § 1034(c)(4)(A)). "If the Secretary of the relevant military department," in turn, "finds a 'sufficient basis to conclude' that a prohibited reprisal has occurred, . . . the Secretary" must decide whether corrective action should be taken, and, if so, must take the appropriate corrective action. *Id.* (quoting 10 U.S.C. § 1034(f)).

That, however, does not end the matter. If "a member or former member of the armed services who has alleged" that he was the victim of a personnel action prohibited by the MWPA remains dissatisfied, he may request that "[a] board for the correction of military records acting under" 10 U.S.C. § 1552 "review the matter." 10 U.S.C. § 1034(g)(1); *see also Rodriguez*, 857 F.3d at 904. The board, then, must "review the report of the Inspector General," "may request

that the Inspector General . . . gather further evidence," "may receive oral argument, examine and cross-examine witnesses, and take depositions," and "shall consider a request by [the] member or former member . . . to hold an evidentiary hearing."  10 U.S.C. § 1034(g)(2).  "If the board holds an administrative hearing," moreover, "the member or former member . . . may be provided with representation by a judge advocate if . . . the Inspector General [found] probable cause to believe that a [prohibited] personnel action [was] taken (or threatened) against the member" in reprisal for a protected communication, "the Judge Advocate General . . . determines that the member or former member would benefit from judge advocate assistance," and "the member is not represented by outside counsel."  *Id.* at § 1034(g)(3).

After conducting its investigation and, if warranted, holding an administrative hearing, the board must "forward its proposed decision to the Secretary of the relevant military department," *Rodriguez*, 857 F.3d at 904, as boards of military corrections typically do, *see* 32 C.F.R. § 723.7 (Board of Correction of Naval Records).  The Secretary of the relevant military department must then, within 180 days, "order such action, consistent with the limitations contained in [10 U.S.C. §§ 1552 and 1553] as is necessary to correct the record of [the prohibited] personnel action," 10 U.S.C. § 1034(g)(5); *see also* 32 C.F.R. § 723.7(b), and, "unless the full relief request is granted," must notify the servicemember of his "right to request review of the decision by the Secretary of Defense," *id.*  If the servicemember (or former servicemember) is still not satisfied, he "may submit the matter to the Secretary of Defense" for further review.  10 U.S.C. § 1034(h).  The Secretary of Defense must then render a final agency decision "within 90 days after receipt of such a submittal."  *Id.*

Although Defendants are on track this far, they err in arguing that the comprehensive nature of the MWPA scheme divests this court of subject-matter jurisdiction over Shaw's APA

claims.  The D.C. Circuit's decision in *Trudeau v. Federal Trade Comm'n*, 456 F.3d 178 (D.C. Cir. 2006), in instructive in this respect.  As that decision explains, courts must take care to distinguish between a variety of concepts that come into play when a federal agency is subject to suit under the APA.  The first question, of course, is jurisdiction.  Here, federal question jurisdiction exists under 28 U.S.C. § 1331, and neither the APA, *see Trudeau*, 456 F.3d at 185, nor the MWPA curtails that grant of jurisdiction.  Indeed, in *Rodriguez v. Penrod*, the D.C. Circuit at least suggested—and arguably held—that this Court has jurisdiction to consider claims brought under the APA alleging unlawful retaliation in violation of the MWPA.  857 F.3d at 905-07.  In that case, the court of appeals concluded that it lacked original jurisdiction to consider such a claim—noting that "APA review takes place first in the federal district courts, not the courts of appeals"—but, then, transferred the case to the district court pursuant to 28 U.S.C. § 1631.  857 F.3d at 906-07.  Because transfer pursuant to § 1631 is available only if the case "could have been brought" in the transferee court "at the time it was filed or noticed," the D.C. Circuit's transfer order assumes that the district court had subject-matter jurisdiction over the dispute.

As *Trudeau* further explains, the second jurisdictional question posed when a federal agency is sued is whether Congress has waived the sovereign immunity of the United States.  456 F.3d at 185.  Because the Court has already concluded that Shaw's claims, if any, for monetary relief fail for lack of jurisdiction, the question of sovereign immunity is straightforward.  The APA contains a broad waiver of sovereign immunity for all claims against "the United States seeking relief other than money damages and stating a claim that [the] agency . . . acted or failed to act."  5 U.S.C. § 702.  That waiver of sovereign immunity applies regardless of whether the plaintiff's cause of action arises under the APA or some other federal

statute, and the APA waiver of sovereign immunity is not restricted by the final-agency-action

requirement, which applies to claims premised on the APA. *Trudeau*, 456 F.3d at 186-87.

Finally, as *Trudeau* further instructs, the Court must consider which, if any, statutes

create the relevant cause of action and whether the plaintiff has alleged facts sufficient to trigger

that statutory cause of action. *Id.* at 187-88. The question is "whether there is a cause of action

that permits [the plaintiff] to invoke the power of the court to redress the violations of law that he

claims [the agency] has committed." *Id.* at 188. As explained above, the MWPA contains no

private cause of action. The same is true of 10 U.S.C. § 624, which Shaw also invokes and

which governs military promotions, and 10 U.S.C. § 1552, which governs correction of military

records. The APA, in contrast, does include a private cause of action, and it is not uncommon

for courts to hear APA challenges brought by former servicemembers challenging a military

department's decision declining to correct a military record. *See Rodriguez*, 857 F.3d at 906

("district courts have routinely reviewed those board decisions in the first instance."); *see also*,

*e.g.*, *McKinney v. Wormuth*, 5 F.4th 42 (D.C. Cir. 2021); *Kidwell v. Dep't of the Army, Bd. for*

*Corr. of Mil. Records*, 56 F.3d 279, 283-84 (D.C. Cir. 1995); *Kreis v. Sec'y of the Air Force*, 866

F.2d 1508, 1514 (D.C. Cir. 1989); *Jackson v. Spencer,* 313 F. Supp. 3d 302, 309 (D.D.C. 2018);

*Villarreal-Darcy v. U.S. Dep't of the Air Force*, 2022 WL 4482597 (D.D.C. Sept. 27, 2022).

That practice is consistent, moreover, with the APA's presumption in favor of judicial review.

*See Abbott Laboratories v. Gardner*, 387 U.S. 136, 140 (1967).

The only relief that Shaw plausibly seeks in this case is the correction of his military

records. He does not—and cannot—seek monetary relief in this case, and he has conceded that

the "merits of promotion decisions," as opposed to the required process and procedures, is

"nonjusticiable." Dkt. 53 at 3. But even though the APA, at times, provides a cause of action

14

relating to the correction of military records, that does not mean that Shaw has adequately pled such a cause of action here.  As explained below, each of his three causes of action, at least as pled, fails as a matter of law.

## B.

Shaw's first cause of action alleges that Defendants violated the APA by engaging in "unreasonable delay" in implementing the corrective action directed by the Assistant Secretary, and he asks that the Court "mandate the Secretary of the Navy to implement the requisite correction action."  Dkt. 51-1 at 18-20 (2d Amd. Compl. ¶¶ 48-57).  The APA does permit a court to "compel agency action . . . unreasonably delayed," 5 U.S.C. § 706, but "Section 706(1) permits judicial review of agency inaction . . . only within strict limits," *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 670 (D.C. Cir. 2016).  Employing a standard that parallels the common law writ of mandamus, "§ 706(1) grants judicial review only if a federal agency has a 'ministerial or non-discretionary' duty amounting to 'a specific, unequivocal command'" to act. *Id.* (quoting *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63-64 (2004)).  Here, Shaw's Second Amended Complaint fails to clear that high hurdle.  Although the MWPA directs that the Secretary of the relevant military department shall decide what corrective action should be taken within 30 days of receiving the Inspector General's report, *see* 10 U.S.C. § 1034(f), Shaw does not allege that the Secretary (or Assistant Secretary) failed to "decide" what action should be taken; to the contrary, he alleges that the Assistant Secretary invalidated the first investigation, required the removal from Shaw's personnel file of any derogatory material resulting from that investigation, and directed the Chief of Naval Personnel to determine *whether* the retaliatory investigation "impacted" Shaw's opportunity for promotion.  Dkt. 51 at 18 (2d Amd. Compl. ¶ 46).

Shaw does complain about "[t]he delay in this matter" that has occurred since the Inspector General issued his report and since the Assistant Secretary issued his decision. *Id.* at 19 (2d Amd. Compl. ¶ 51). But he fails to identify any statute or regulation requiring any relevant "corrective action," beyond those actions already taken, that must occur within a specified time frame or even in an expeditious manner. The closest he comes is by referring to 10 U.S.C. § 624(a), which directs that officers included on the promotion list "shall be promoted to the next higher grade when additional officers in that grade and competitive category are needed" and that "[p]romotions shall be made in the order in which the names of the officers appear on the promotion list," 10 U.S.C. § 624(a)(1). *See* Dkt. 53 at 5. But, even putting aside the fact that the promotion of a military officer is an inherently discretionary act, review of which generally lies beyond the competence of the judiciary, Shaw elides the fact that the statute further provides that "the appointment of an officer under this section may be delayed if . . . an investigation is being conducted to determine whether disciplinary action of any kind should be brought against the officer." 10 U.S.C. § 624(d)(1)(B). And, as Shaw concedes, "the Assistant Secretary authorized the convening of a" second investigation, Dkt. 51 at 20 (2d Amd. Compl. ¶ 47). Although Shaw maintains that the second investigation was also retaliatory and in violation of the MWPA, that contention does nothing to further his § 706(1) claim of unreasonable delay. Because it was that second investigation that delayed Shaw's promotion, and because the decision to authorize an investigation is an inherently discretionary act, Shaw's § 706(1) claim fails as a matter of law.

Finally, and most significantly, Shaw's claim of unreasonable delay misunderstands the type of exclusively prospective relief that is available under the APA. According to Shaw, what is "[m]ost critical to this Court's determination of this matter . . . is the consequence of the

Secretary's delay." Dkt. 51 at 20 (2d Amd. Compl. ¶ 56).  As he explains it, because of the

Navy's delay in implanting the Assistant Secretary's decision, "he was unable to serve and

unable to move on with his life until the Secretary of the Navy concluded an independent review

and terminated the continuing reprisal." *Id.*  But that injury occurred in the past and is beyond

the remedial authority of the Court in an APA action, and Shaw fails to identify any matter that

is currently pending before the Navy that requires expedition.  Given the retrospective nature of

the alleged injury, moreover, Shaw is unable to allege any facts that would support relief under

the four-factor test established in *Telecommunications Research & Action Center v. FCC*, 750

F.2d 70 (D.C. Cir. 1984) ("*TRAC*"), for claims of unreasonable delay.  He does not identify, for

example, any statutory timetable or similar requirement, any current prejudice that he is suffering

due to any ongoing delay in agency action (indeed, nothing remains pending before the Navy at

this time), no concern relating to human health or welfare, and no reason to prioritize his request

for relief over other matters that (unlike his request) remain pending before the agency.  *Id.* at

79-80 (describing factors).

       The Court will, accordingly, dismiss Count I for failure to state a claim.

## C.

       Shaw's second claim alleges that the "Secretary of the Navy failed to follow procedures

mandated by statute or by its own regulations when making promotion decisions as required by

10 U.S.C. § 1552(a) and 10 U.S.C. § 624."  Dkt. 51 at 21 (2d Amd. Compl. ¶ 61).  Although

Shaw's theory of relief is, once again, far from clear, he appears to contend that (1) if there was

no "cause" for the delay in his promotion, then 10 U.S.C. § 1552(a) required the Secretary to

correct Shaw's military record to reflect his "promotion with associated pay," *id.* (2d Amd.

Compl. ¶¶ 59, 61), and (2) because the Assistant Secretary "directed removal of all adverse

material from his record," and because "no disciplinary action [was] taken by the Secretary of

the Navy," 10 U.S.C. § 624 required the Navy to promote him "to the next higher grade," even

after he separated from the Navy, *id.* (2d Amd. Compl. ¶¶ 60, 62).   Shaw misreads both statutes.

First, Shaw misreads 10 U.S.C. § 1552(a).  That statute does provide, as Shaw suggests,

that the Secretary of the relevant "military department may correct any military record of the

Secretary's department when the Secretary considers it necessary to correct an error or [to]

remove an injustice."  10 U.S.C. § 1552(a)(1).  So far, so good.  But the very next sentence of the

statute provides (subject to an exception inapplicable here) that "such corrections *shall* be made

by the Secretary *acting through boards* of civilians or the executive part of the military

department."  *Id.* (emphasis added).  The statute, then, goes on to specify procedures for seeking

the correction of military records before through the statutorily-prescribed boards and, in

addition, requires that the Secretary of the relevant military service establish further procedures,

some of which must be approved by the Secretary of Defense.  10 U.S.C. § 1552(a)(3).  Where a

request for correction of records is initiated through the whistleblower protection process,

moreover, the MWPA specifies additional procedures, as described above.

Notably, Shaw invokes only § 1552(a) (and the Military Pay Act, which is unavailing for

the reasons discussed above) in support of his second cause of action, and, as relevant here, that

statute applies only when a member or former member of the military files a request for

correction.  *See*, *e.g.*, 10 U.S.C. § 1552(b) ("No correction may be made under subsection (a)(1)

unless the claimant . . . files a request for the correction within three years after discovering the

error or injustice."); *see also* 32 C.F.R. § 723.3(a) ("The application for correction must be

submitted on DD 149 (Application for Correction of Military Record) or exact facsimile thereof,

and should be addressed to: Board of Correction of Naval Records").  Here, however, Shaw

never alleges that he applied to a board of military corrections to redress "an error or injustice," 10 U.S.C. § 1552(a), or to redress "an alleged . . . personnel action prohibited by" the MWPA, 10 U.S.C. § 1034.  Having failed to invoke the board of corrections process—or at least having failed to allege that he did so—Shaw cannot now complain that the Navy failed to correct his military record pursuant to a process that he never invoked.

Although the parties battle over whether Shaw was required to exhaust his administrative remedies, *compare* Dkt. 52-1 at 36-38 *with* Dkt. 53 at 3 n.3, that dispute misses the point. Regardless of whether exhaustion is invariably required to obtain APA review in cases implicating 10 U.S.C. § 1552, *see Ostrow v. Sec'y of the Air Force*, 48 F.3d 562 (D.C. Cir. 1995) (mem.), a plaintiff cannot plausibly allege that a military department has violated § 1552 by failing to correct his military record when that plaintiff failed even to initiate the § 1552 process by filing a request for correction with the relevant board.  To be sure, the Supreme Court held in *Darby v. Cisneros*, 509 U.S. 137, 147 (1993), that the APA does not mandate the exhaustion of all administrative appeals when not required by statute or agency rule.  But, in that case, a hearing officer had issued a determination, and the agency's regulations provided that such decisions "shall be final" unless the Secretary grants a request for further review.  *Id.* at 141 (citing 24 C.F.R. § 24.314(c) (1994)).  Here, in contrast Shaw never requested even an initial decision from a board of corrections, and, unsurprisingly, he never received any such decision. As the Supreme Court explained in *Darby*, "the judicial doctrine of exhaustion of administrative remedies is conceptually distinct from the doctrine of finality," and "'[t]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury.'"  *Id.* at 144 (quoting *Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 193 (1985)).  Because Shaw fails to identify any decision rendered

by a board of military corrections—that is, the "initial decisionmaker" for purposes of § 1552—

he cannot state an APA claim premised on a violation of that statute.

Second, Shaw also misreads 10 U.S.C. § 624.  He alleges that because "no disciplinary

action [was] taken" as a result of the first investigation, the Navy was required to promote him

"the same position on the active-duty list as he would have had if no delay had intervened."  Dkt.

51 at 21 (2d Amd. Compl. ¶ 60).  But, as explained above, Shaw acknowledges that the Assistant

Secretary "authorized the convening of a . . . second" investigation.  Id. at 18 (2d Amd. Compl.

¶ 47).  As a result, his claim fails under 10 U.S.C. § 624(d)(1)(B), which expressly contemplates

and authorizes the delay of a promotion when, as was the case here, "an investigation [was]

being conducted to determine whether disciplinary action of any kind should be brought against

the officer."

The Court, accordingly, will dismiss Shaw's second cause of action for failure to state a

claim.

### D.

Finally, Shaw's third cause of action alleges that the Secretary of Defense failed to

comply with the MWPA.  Dkt. 51 at 22 (2d Amd. Compl. ¶ 64).  Because Shaw's theory of relief

is difficult to follow and, in any event, is contained in a single paragraph, the Court will quote his

cause of action in full:

> The administrative record is absent of any determination or basis upon which
> Lt. Shaw was denied his requested relief.  The final adjudication by the Secretary
> of Defense's analysis is barren and untethered to the exhaustive and well
> documented appeal.   The meager administrative record produced by the
> government is replete with misinformation provided by those directly
> responsible for previously producing the requested information in the matter
> contrary to what was conveyed to the Secretary of Defense and the Secretary of
> Defense's reliance upon this assertions while ignoring the robust record which
> documents the contradictions was an abuse of discretion and not a review as
> required by the statute—but instead a rubber stamp in coordination with the

offending parties within the Department of the Navy.  Only when the actual
office of the Department of the Secretary of the Navy finally had an opportunity
to review the materials was the reprisal effort terminated.  The Secretary of the
Defense could have achieved the same conclusion had it reviewed the appeal
and its appended supporting documentation instead of simply collaborating with
the very persons involved and supporting the reprisal.

Dkt. 51 at 22 (2d Amd. Compl. ¶ 64).

Based on the slim and disjointed allegations contained in the Second Amended

Complaint, the Court can only guess about what "final adjudication by the Secretary of Defense"

Shaw intends to challenge.  That lack of clarity provides sufficient grounds to dismiss Shaw's

third cause of action, which includes little more than legal conclusions and vague references to

"misinformation," "contradictions," and improper "collaborat[ion]."  As the Supreme Court

explained in *Ashcroft v. Iqbal*, Federal Rules of Civil Procedure 8 and 12(b)(6) "demand[] more

than . . . unadorned, the-defendant-unlawfully-harmed-me accusation[s]."  556 U.SS. 662, 678

(2009).  It follows that "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice," nor do "'naked assertion[s]' devoid of 'further

factual enhancement.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

Rather, a plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"  *Id.* (quoting Twombly, 550 U.S. at 570).  Here, Shaw's

allegations fail that test.

But, even giving Shaw the benefit of the doubt and filling in the gaps in his complaint

with other materials filed in this litigation, the Court is unpersuaded that he has stated a claim.

The Court infers, based on other submissions, that Shaw's third cause of action seeks to

challenge a decision rendered by the Executive Director of the Office of the Under Secretary of

Defense for Personnel and Readiness ("Executive Director"), who was acting on behalf of the

Secretary Defense.  *See Shaw I*, 539 F. Supp. 3d at 172.  That decision resolved Shaw's

administrative appeal of the Assistant Secretary's decision to permit the second investigation to

go forward, notwithstanding the retaliatory motives that infested the first investigation.  *Id.* at

176.  After setting forth the procedural history of the dispute, the Executive Director wrote to

Shaw's counsel, as follows:

> I have carefully considered the materials you submitted.  Based on my review, I
> find the actions directed by the Assistant Secretary have been effectuated with
> the exception of one corrective item, concerning your client's promotion delay,
> which remains outstanding.   The Chief of Naval Personnel determined the
> promotion was delayed due to the original CDL.  However, the delay remains in
> place since a second investigation was ordered and has not been finalized.  Since
> the outcome of the second CDI could influence the resolution of this matter, the
> Assistant Secretary reasonably allowed correction of the promotion delay to
> remain pending.
>
> I also find the Assistant Secretary has the authority to allow the second
> investigation to be conducted, and his actions do not constitute unlawful
> command influence.  At this time, there is no justification to set aside the second
> investigation.  As to your client's new allegation of retaliation related to the
> second investigation, [the Inspector General] is responsible for investigating or
> overseeing investigations of allegations of restriction or reprisal; as such, [the
> Inspector General] is the proper authority to review this allegation and decide
> whether further investigation is warranted.  Accordingly, I have forwarded this
> new allegation of retaliation to [the Inspector General] for review and
> appropriate action.

Dkt. 24-2 at 3.

In short, the Executive Director represented that he had "carefully considered the

materials" that Shaw submitted and was unpersuaded, "[a]t th[at] time," that there was

"justification to set aside the second investigation."  And, more importantly, he correctly

observed that any "new allegation" of a retaliatory motive should be raised in the first instance

with the Inspector General, as 10 U.S.C. § 1034(b) requires.  Nothing in this decision—and,

more importantly, nothing in the complaint—supports Shaw's conclusory allegations the

Executive Director's decision (if, in fact, that is the decision that Shaw intends to challenge)

constituted an abuse of discretion.  To the contrary, Shaw alleges that the Assistant Secretary's

authorization for the second investigation was infected by a retaliatory motive, and the Executive

Director correctly informed Shaw that any new allegation of retaliatory motive should be raised

with the Inspector General.

The Court will, accordingly, dismiss Shaw's third cause of action for failure to contain "a

short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ.

P. 8(a)(2), and for failure to state a claim, Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendant's Motion to Dismiss, Dkt.

52, as conceded in part and on the merits in part; will **DISMISS** any claim for monetary relief

for lack of subject-matter jurisdiction; and will otherwise **DISMISS** without prejudice Plaintiff's

Second Amended Complaint pursuant to Rules 8 and 12(b)(6) for failure to state a claim.

Absent a showing of good cause, the Court will enter a separate order dismissing and

terminating the case in 14 days.


/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge


Date:  January 23, 2023